[No. B158722. Second Dist., Div. Eight. Sept. 25, 2002.]

In re WILMER EDUARDO ALBERTO on Habeas Corpus.

**COUNSEL**

Michael P. Judge, Public Defender, Mary Burton and John Hamilton Scott, Deputy Public Defenders, for Petitioner Wilmer Eduards Alberto.

Steve Cooley, District Attorney, Patrick D. Moran and Matthew G. Monforton, Deputy District Attorneys, for Respondent the People.

**OPINION**

**RUBIN, J.**—After one judge sets bail for a criminal defendant awaiting trial, may another judge increase the bail solely because the second judge believes the first judge's bail determination at the time was erroneous? We answer this question in the negative, and, therefore, grant the petition.

### FACTUAL AND PROCEDURAL HISTORY

On August 20, 2001, a felony complaint was filed charging petitioner Wilmer Eduardo Alberto (and a codefendant who is not a party to this writ proceeding) with one count of first degree residential robbery. (Pen. Code, §§ 211, 212.5, subd. (a).) Bail was set at $35,000. Alberto posted it and was released.

The preliminary hearing took place on October 17, 2001. The crime victim testified he was working as an attendant at a parking lot in downtown Los Angeles when Alberto and an accomplice drove into the lot. According to the attendant, Alberto got out of the car, put a gun to his neck, and

demanded money. The attendant gave Alberto $1,800. However, Alberto's accomplice (who was still in the car) told Alberto to shoot the attendant because the attendant was not giving up all the money. Alberto did not fire his weapon, but his accomplice did. The shot missed the attendant. According to the attendant, Alberto then told the accomplice to shoot again because the attendant had not handed over the money. It appears, however, that no additional shots were fired before Alberto and the accomplice drove away. Police later arrested both men.

Alberto was held to answer, albeit on an amended charge of second degree robbery and an armed with a firearm allegation (Pen. Code, § 12022, subd. (a)(1)).[1]

In February 2002, a grand jury indicted Alberto on one count of attempted, willful, deliberate, premeditated murder (Pen. Code, §§ 187, subd. (a), 664), and one count of second degree robbery, both arising out of the incident described above. After the indictment was filed (under a new case number), the original case against Alberto was dismissed.

On February 25, 2002, Alberto and his alleged accomplice appeared for arraignment on the indictment before Judge David S. Wesley. At the hearing, the People requested bail based on the statutory schedule of $1,050,000 for Alberto and $1,505,000 for his accomplice. Judge Wesley agreed with the People in setting scheduled bail for the codefendant. In arguing against an increase in bail for her client, counsel for Alberto pointed out that (1) the bail had been previously set at $35,000 and, even though the charges now were more serious, they were based on the same set of facts as the initial robbery charge; (2) Alberto had made nine court appearances after posting the original bail; and (3) the victim gave live testimony at the preliminary hearing.[2] Other than requesting the scheduled amount, the People made no argument in support of higher bail. At the conclusion of the hearing, Judge Wesley set bail at $35,000, stating: "I will grant him the same bail because he's already posted [that amount when he was charged with robbery]." However, because of uncertainty as to whether the bail was transferable or whether Alberto could obtain a new bond, defendant was remanded to custody.

Alberto posted bail on the new case on March 4. He then attended two additional hearings before appearing for the first time on April 30 before

---

[1] There was no evidence that a residential robbery, as originally charged, took place.

[2] This argument was presumably intended to show that Alberto had no incentive to harm the victim as his testimony had already been reported. (See generally Evid. Code, §§ 1291, 1294.) Alberto had been released on bail at the time of the preliminary hearing in October.

Judge Ruth Ann Kwan, to whom the case had been assigned for all purposes. Toward the end of the April 30 hearing, the People asked to be "heard on a bail review." The district attorney stated that Judge Wesley "declined to hear and set bail" and asked for the scheduled bail of $1,050,000. Counsel for Alberto objected to the motion because she had not been given notice. She also briefly reviewed for the court the proceedings before Judge Wesley. Judge Kwan agreed to hear the matter on May 3, releasing Alberto on the then current bail already posted.

At the May 3 hearing, the parties briefly argued: the People asserting that Judge Wesley had neither considered all the relevant factors nor given an explanation for departing from the schedule when he set bail at $35,000, and Alberto's counsel urging the court not to consider the request to increase bail because the district attorney had not shown any change in circumstances.[3] Alberto's attorney also asked for a brief continuance because the transcript of the hearing before Judge Wesley was not yet available. Judge Kwan continued the matter to May 8 and released defendant on the bond posted.

As of the continued hearing on May 8, Alberto had been out of custody for over six months (except for the time between February 25 and March 4 when he reposted the $35,000 bail). At the hearing, Alberto's counsel again claimed there were no changed circumstances that would warrant a bail review. Counsel also noted that Alberto had appeared for all hearings since bail was first set at $35,000, including several hearings that took place after he was charged with attempted murder.

Judge Kwan concluded that Judge Wesley had not identified any unusual circumstances justifying departure from the bail schedule and had not considered all the relevant factors before setting bail at $35,000. Judge Kwan determined this failure constituted "good cause" under Penal Code section 1289 to reconsider the amount of bail. After hearing argument from counsel regarding the appropriate amount of bail, Judge Kwan fixed bail at the scheduled amount of $1,035,000.

After unsuccessfully seeking habeas corpus relief in the superior court, Alberto filed a petition for a writ of habeas corpus in this court. We issued an order to show cause, received additional briefing from the parties, and heard oral argument.

---

[3]Trial court judges in each county are required to establish a bail schedule for all felony offenses. (Pen. Code, § 1269b, subd. (c).) Judges have discretion to deviate from the schedule, but only upon a finding of "unusual circumstances," which are to be stated on the record. (See Pen. Code, § 1275, subd. (c).) Section 1289 provides that after the defendant has been admitted to bail, the court may, upon good cause shown, either increase or decrease the bail.

Petitioner has challenged the constitutionality of section 1275, subdivision (c), an issue we do not decide.

DISCUSSION

Penal Code section 1289 provides in pertinent part: "After a defendant has been admitted to bail upon an indictment or information, the Court in which the charge is pending may, *upon good cause shown*, either increase or reduce the amount of bail . . . ." (Italics added.)

It is undisputed that Judge Kwan's decision to reconsider Judge Wesley's original bail determination was based solely on her belief that Judge Wesley had not complied with the statutory requirements for departing from the bail schedule. Alberto claims this did not qualify as "good cause" for increasing bail under Penal Code section 1289. We agree.

1. *Standard of Review.*

■ Although neither party addresses the standard of review applicable to this petition, both sides impliedly concede that there are no factual disputes that were resolved by Judge Kwan in resetting bail. Accordingly, as this matter presents exclusively a question of law, we review the trial court's ruling de novo. (*People v. Culp* (2002) 100 Cal.App.4th 1278, 1282 [122 Cal.Rptr.2d 924]; see *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

2. *Judge Kwan Was Without Authority to Reverse Judge Wesley's Order Even If the Latter Failed to Comply with the Bail Statute.*

■ This writ proceeding implicates two related concepts: One, a court's ability to reconsider its own orders when it believes it has erred; and two, the notion that comity between two judges sitting on the same court imposes limitations on one judge's authority when another judge has already acted.

■ There is little debate that in a criminal cause the court generally has the authority to correct its own prejudgment errors. (*People v. Rose* (1996) 46 Cal.App.4th 257, 262-263 [53 Cal.Rptr.2d 559].) "In criminal cases, there are few limits on a court's power to reconsider interim rulings . . . ." (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246 [77 Cal.Rptr.2d 314] (*Castello*).) For example, in *Castello,* the appellate court concluded that neither limitations imposed on motions for reconsideration in *civil* cases (see Code Civ. Proc., § 1008) nor any other rule precluded the trial court from reconsidering its previous ruling that a prior Florida conviction qualified under the "Three Strikes" law. (*Castello,* at p. 1245.)

This rule is founded on our preference for justice over the rigid adherence to procedure. "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, particularly in criminal cases where life, liberty, and public protection are at stake. Such a rule would be ' ". . . a serious impediment to a fair and speedy disposition of causes . . . ." ' " (*Castello, supra*, 65 Cal.App.4th at p. 1249.)

■    Different policy considerations, however, are operative if the reconsideration is accomplished by a different judge. Accordingly, the general rule is just the opposite: the power of one judge to vacate an order made by another judge is limited. (*Greene v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583, 1588 [274 Cal.Rptr. 736] (*Greene*).) This principle is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice. "If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law. To affirm the action taken in this case would lead directly to forum shopping, since if one judge should deny relief, defendants would try another and another judge until finally they found one who would grant what they were seeking. Such a procedure would instantly breed lack of confidence in the integrity of the courts." (*People v. Superior Court (Scofield)* (1967) 249 Cal.App.2d 727, 734 [57 Cal.Rptr. 818] [first judge's ruling upholding search warrant was binding on second judge; order granting Pen. Code, § 995 motion reversed].)

The foundation of the rule is usually attributed to our Supreme Court's decision in *Wyoming Pac. Oil Co. v. Preston* (1958) 50 Cal.2d 736 [329 P.2d 489] (first judge's finding of diligence in service of process precluded second judge from dismissing case for lack of diligence). Its actual underpinnings, however, are several earlier cases. In *Fallon v. Superior Court* (1939) 33 Cal.App.2d 48, 52 [90 P.2d 858], the appellate court issued a writ of prohibition restraining a successor law and motion judge from vacating an order of his predecessor. In *Sheldon v. Superior Court* (1941) 42 Cal.App.2d 406, 408 [108 P.2d 945], the Court of Appeal annulled the order of one probate judge who had vacated a previous order made by another judge appointing an administrator. (See also *Williams v. Superior Court* (1939) 14 Cal.2d 656, 662 [96 P.2d 334]; *People v. Grace* (1926) 77 Cal.App. 752, 759 [247 P. 585].)

For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court. "The Superior Court of Los Angeles County, though comprised of a number of judges, is a single court and one member of that court

cannot sit in review on the actions of another member of that same court." (*People v. Woodard* (1982) 131 Cal.App.3d 107, 111 [182 Cal.Rptr. 254] [second judge had no power to enforce a plea bargain after first judge permitted defendant to withdraw plea].) Stated slightly differently, because a superior court is but one tribunal, an order " ' " ' 'made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . .' " ' " (*Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 741 [233 Cal.Rptr. 607] [one judge lacked power to enjoin the enforcement of a judgment rendered by another judge].)

This rule has been applied in a myriad of settings in both criminal and civil cases. (See, e.g., *People v. Madrigal* (1995) 37 Cal.App.4th 791, 795-797 [43 Cal.Rptr.2d 498] [ruling of second judge imposing a prison sentence after probation violation hearing is unlawful when first judge had earlier reinstated probation]; *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 630-631 [5 Cal.Rptr.2d 742] [second judge without power to vacate default judgment entered by first judge]; *Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060, 1068-1071 [283 Cal.Rptr. 917] [reversing order unsealing record after previous judge ordered record sealed]; *Micro/Vest Corp. v. Superior Court* (1984) 150 Cal.App.3d 1085, 1088-1091 [198 Cal.Rptr. 404] [second judge may not determine that first judge improperly struck Code Civ. Proc., § 170.6 challenge].)

Alberto relies on *In re Kowalski* (1971) 21 Cal.App.3d 67 [98 Cal.Rptr. 444] (*Kowalski*), in support of his argument that Judge Kwan was without authority to review Judge Wesley's bail order. There, the petitioner sought a writ of habeas corpus after Judge Low ignored an order by Judge Fisher that granted a Penal Code section 995 motion and dismissed the case. Instead, Judge Low reinstated proceedings and set the matter for trial. The Court of Appeal reversed. Noteworthy is the fact that the case had in the very first instance actually been assigned to Judge Low who had denied the section 995 motion. Four days later, Judge Fisher, who was presiding over the trial, declared a mistrial and granted a renewed section 995 motion and ordered dismissal. Nevertheless the parties found themselves again before Judge Low—the opinion does not explain how—who stated that Judge Fisher had acted in excess of jurisdiction since he, Judge Low, had already denied the section 995 motion. Judge Low ordered a new trial and fixed bail. (*Kowalski*, at pp. 69-70.) In reversing, the Court of Appeal stated that in the absence of changed circumstances Judge Fisher had no power to nullify Judge Low's order. And there were no changed circumstances. However, until properly overturned by an appellate court, Judge Fisher's order was duly entered (although erroneous), and Judge Low was without power to reverse it. The Court of Appeal granted the writ, reinstating the dismissal.

What is significant about *Kowalski* is the Court of Appeal's recognition that both Judge Fisher and Judge Low acted improperly by reversing seriatim the other's decision. The appellate court did not reinstate the criminal charges, however, even though the first order (by Judge Low) had denied the Penal Code section 995 motion. The court concluded that the People should have appealed Judge Fisher's order but instead they "bypassed orderly procedures for review" and returned to Judge Low. (*Kowalski, supra*, 21 Cal.App.3d at p. 71.) The only order as to which appellate relief was sought was the third order made by Judge Low. Even though both the third (Low) and the second (Fisher) orders were improper, the court upheld the second order, the only ruling under review.

The People here argue that *Kowalski* has no application to this case in that the gravamen of Judge Low's error was that he acted after the case had been dismissed. While that is factually correct, significantly, the Court of Appeal noted that both Judge Fisher and Judge Low were in error in reversing each other's decision, one prejudgment, the other postjudgment. Judge Low's order, which in one sense should have stood since it merely "reinstated" his first-in-time ruling, was reversed because it was the order that was the subject of appellate review, not because it was postjudgment. A review of the various cases that we have cited shows that the rule prohibiting a second judge from interfering with another judge's order is the same whether the second judge acts before or after judgment. (See, e.g., *People v. Superior Court, supra,* 249 Cal.App.2d 727; *Church of Scientology v. Armstrong, supra,* 232 Cal.App.3d 1060; *Sheldon v. Superior Court, supra,* 42 Cal.App.2d 406.)

The People rely on three cases in support of their contention that Judge Kwan was empowered to reset bail because Judge Wesley's order was deficient as a matter of law. None is availing because each involves a single judge reconsidering his own ruling. In *Castello, supra,* 65 Cal.App.4th 1242, the same judge who refused to strike a prior Florida conviction changed his mind and ruled that it did not qualify as a third strike. (*Id.* at pp. 1245-1246, 1250.) The *Castello* court distinguished its case on just that basis from decisions such as *Greene, supra,* 224 Cal.App.3d 1583, and *Kowalski, supra,* 21 Cal.App.3d 67. *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817], disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 [88 Cal.Rptr.2d 366, 982 P.2d 229], involved the same trial judge who initially denied summary adjudication without complying with Code of Civil Procedure section 437c, subdivision (g), eventually reversing himself and granting summary judgment. And in *De la Beckwith v. Superior Court* (1905) 146 Cal. 496, 500 [80

P. 717], the Supreme Court concluded that the judge properly reconsidered his order sustaining demurrers.[4]

The present case does not fall within either of two narrow lines of cases that appear to authorize one trial judge to reconsider an issue already decided by a colleague: one, where the first judge is unavailable (see *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 [254 Cal.Rptr. 410] (*Ziller*)), or two, where the first order was made through inadvertence, mistake, or fraud. (See *Sheldon v. Superior Court, supra,* 42 Cal.App.2d at p. 408; *Fallon v. Superior Court, supra,* 33 Cal.App.2d at pp. 50-52.) The People do not claim that Judge Wesley was unavailable to hear a renewed bail motion or that his order was the product of any inadvertence, mistake, or fraud.

We do not hold here that Judge Kwan was not empowered to conduct a bail hearing. Penal Code section 1289 expressly provides for subsequent motions to increase or reduce bail upon a showing of good cause. However, the good cause must be founded on changed circumstances relating to the defendant or the proceedings, not on the conclusion that another judge in previously setting bail committed legal error. Although not necessarily exhaustive, factors to be considered in "setting, reducing or denying" bail are set forth in section 1275: protection of the public (the "primary consideration"), seriousness of the offense, previous criminal record, and probability of defendant appearing in court. (See also *In re Berman* (1930) 105 Cal.App. 270, 271-272 [287 P. 373] [proper to consider under § 1289 amount of bail posted by defendant in another pending case]; *Ex parte Black* (1934) 140 Cal.App. 361 [35 P.2d 355] [numerous factors]; *In re Grimes* (1929) 99 Cal.App. 10 [272 P. 1052] [moral turpitude of the offense, penalty provided by law].) Whether subsequent to Judge Wesley's bail order circumstances have changed in the context of these factors is an appropriate

---

[4]Formerly, an exception to the general rule that one trial judge may not reverse a decision of another trial judge existed in the situation where a motion for judgment on the pleadings followed the overruling of a demurrer. It was, and in some courts still is, frequently the case that a judge presiding in the law and motion department would be assigned the demurrer, whereas the motion for judgment on the pleadings would typically be made before the judge assigned for trial. The former rule permitting the trial judge to enter judgment on the pleadings even though the law and motion judge had overruled a demurrer was premised on the notion that a trial should be avoided if as a matter of law the complaint was legally without merit. (See *Ser-Bye Corp. v. C. P. & G. Markets* (1947) 78 Cal.App.2d 915, 918 [179 P.2d 342]; see generally 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 172, pp. 586-587.)

By statute, a motion for judgment on the pleadings now may be made only when "there has been a material change in applicable case law or statute since the ruling on the demurrer." (Code Civ. Proc., § 438, subd. (g)(1).) In such situations, the second judge is not reconsidering the first judge's ruling but is applying new law raised for the first time.

consideration for the court in conducting a hearing pursuant to section 1289. (Cf. *People v. Locklar* (1978) 84 Cal.App.3d 224, 230 [148 Cal.Rptr. 322] [second judge may reconsider prior denial of consolidation motion where there are changed circumstances].)

Equally so, our decision does not mean that the People were without remedy if they believed Judge Wesley erred as a matter of law in the setting of bail by, for example, considering factors not permitted by law, ignoring relevant information, or failing to make required findings. The People's remedy was to seek review of Judge Wesley's order by extraordinary writ in this court.[5] (See *People v. Superior Court (Kim)* (1993) 20 Cal.App.4th 936, 938, 942 [25 Cal.Rptr.2d 38] [writ of mandate granted ordering the denial of bail when trial court admitted juvenile defendant to bail for capital offense].)

3. *Remedy.*

Alberto's habeas corpus petition asks us to set bail in a reasonable amount. The People argue that the bail was properly fixed and that we should simply deny the petition. Our potential remedies are not so limited. We could review Judge Wesley's order as if the matter came to us by petition for extraordinary writ from that order. Authority for such a proposition is found in *People v. American Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799 [110 Cal.Rptr.2d 799]. There, one superior court judge granted summary judgment forfeiting a bond in a criminal case. The ruling was improper since the bonding company had not received statutory notice. (*Id.* at p. 804.) When this failure came to the attention of another judge in connection with a motion to vacate the summary judgment and exonerate the bond, the second judge granted the motion, thus nullifying the first judge's order. Division Four of this court found the second judge's order legally correct on the merits and affirmed. ▊ "While the practice of one judge overruling the decisions of *another* is improper, an appellate court cannot *reverse* a trial court's ruling which correctly follows the law merely because it disagrees with an earlier, incorrect ruling." (*Ibid.,* fn. 7, italics added; see *Payne v. City of Perris* (1993) 12 Cal.App.4th 1738, 1743 [16 Cal.Rptr.2d 143] [second judge not entitled to "rethink" a legal issue and render a ruling inconsistent with an earlier ruling but "little purpose would be served in reversing the judgment" if the second judge is correct].)

Alternatively, if we were convinced that Judge Wesley erred in setting bail other than at the scheduled amount because he failed to make the

---

[5]The People correctly note by way of a passing reference that they could not have appealed Judge Wesley's ruling. They do not contend, and we do not believe, that the principles regarding priority of jurisdiction are somehow rendered inapplicable because review must be sought by way of an extraordinary writ.

findings of " 'unusual circumstances' " on the record (Pen. Code, § 1275, subd. (c)), we could remand the matter to Judge Wesley to conduct further proceedings with directions to make appropriate findings on whether the circumstances were unusual. (See *Curtin v. Koskey* (1991) 231 Cal.App.3d 873, 877-878 [282 Cal.Rptr. 706] [cause remanded to first judge to make relevant findings].)

Instead, we take a third path. First, we express no opinion on whether Judge Wesley's order complied with Penal Code section 1289. Second, in light of the passage of time and the possibility that changed circumstances may exist, the trial judge to whom the case is currently assigned may conduct a further hearing pursuant to section 1289 and determine whether there is good cause (as we have explained the term in our opinion) to increase bail over $35,000. Although the trial court has wide discretion in determining whether circumstances have changed to grant an increase in bail—discretion that will not normally be disturbed on appeal (*In re Grimes, supra,* 99 Cal.App. at p. 12)—the trial court on remand may not take into account its view of the validity of Judge Wesley's order in determining whether good cause exists. Alternatively, the presently assigned judge may transfer the case to Judge Wesley to permit him to reconsider his earlier ruling. (See *Ziller, supra,* 206 Cal.App.3d at p. 1232 [second judge should refer reconsideration motion to first judge].)

## DISPOSITION

The petition for habeas corpus is granted with directions to the trial court to conduct a further bail hearing consistent with the views expressed herein or set bail at $35,000. Compliance shall be within five court days of the date this decision becomes final. This decision shall become final as to this court five days after it is filed. (Cal. Rules of Court, rule 24(d).)

Cooper, P. J., and Boland, J., concurred.

On September 30, 2002, the opinion was modified to read as printed above.