[No. A125626. First Dist., Div. One. Apr. 8, 2010.]

ALEJANDRO ALVAREZ, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Jeff Adachi, Public Defender, Teresa Caffese, Chief Deputy Public Defender, Linda Harris Colfax and Christopher F. Gauger, Deputy Public Defenders, for Petitioner.

Duane A. Dammeyer, Public Defender (Ventura) and Michael C. McMahon, Chief Deputy Public Defender, for California Public Defenders Association and the Public Defender of Ventura County as Amici Curiae on behalf of Petitioner.

Ann C. Moorman and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Petitioner.

Meyers, Nave, Riback, Silver & Wilson and Joseph M. Quinn for Respondent.

Jarvis, Fay, Doporto & Gibson, Benjamin P. Fay and Rick W. Jarvis for Presiding Judges of the Superior Courts of Alameda, Contra Costa, and Napa Counties as Amici Curiae on behalf of Respondent.

Edmund G. Brown, Jr., Attorney General, and Gerald A. Engler, Assistant Attorney General, for Real Party in Interest.

## Opinion

**MARCHIANO, P. J.**—Defendant Alejandro Alvarez reached an agreement with the prosecution for a disposition of the criminal charges against him. The judge in whose chambers the deal was struck approved the agreement but did not take defendant's plea. The judge transferred the case to a designated judge to approve and accept the plea pursuant to a local court procedure by which the presiding judge assigns two judges the responsibility for approving plea agreements reached after a case is set for trial. After reviewing the case, including the serious nature of two charged robberies, the second judge declined to approve the bargain. Defendant would not agree to the disposition the second judge was willing to accept. Defendant filed a petition for writ of mandate or prohibition disputing the process.

In his petition for writ of mandate or prohibition, defendant/petitioner contends that the court's judicial assignment procedure limiting the judges who are authorized to accept plea agreements is invalid because it was not promulgated as a local rule of court, or because it conflicts with other law. We disagree for the reasons explained below and deny the petition.

## I. BACKGROUND

### A. *Defendant's Case*

Defendant was charged by information with committing the following crimes on May 3, 2009: second degree robbery of Amanda Fisher (Pen. Code, § 211), while on bail (Pen. Code, § 12022.1); receiving stolen property of Amanda Fisher (Pen. Code, § 496, subd. (a)), while on bail; second degree robbery of Jupei Hsiao; and unlawful display of an imitation firearm (Pen. Code, § 12556).

The record does not include the preliminary hearing transcript, but some of the circumstances of the offenses are set forth in points and authorities filed in connection with defendant's motion to set aside the information (Pen. Code, § 995 (hereafter section 995)).

Ms. Hsiao was walking home around 3:30 p.m. when she was assaulted by defendant and a young Latina female. Hsiao looked over her shoulder and saw them running toward her. The female began hitting her, and defendant joined in the attack. They stole the iPod touch and house keys Hsiao had been holding in her hand.

Ms. Fisher was walking to a grocery store around 7:30 p.m. when defendant and a woman attacked her. Defendant threw his arm over Fisher's shoulder, forcing her to the ground. Defendant and the woman hit Fisher as she lay in a fetal position, clutching her purse. She gave them the purse to stop the beating.

On June 1, 2009, defendant was arraigned on the information, and trial was set for July 17, 2009. Defendant filed his section 995 motion on July 7, 2009, and moved on July 14, 2009, to continue the July 17 trial date, advising that his counsel would not be available on that date or on July 20, 2009, when the section 995 motion was set to be heard. The section 995 motion came on for hearing before Judge Kevin McCarthy (Dept. 24) on July 24, 2009. No pretrial conference had been held up to that point in the case, but it appears that one had been scheduled for August 20, 2009, in Department 23, one of the two departments of the superior court designated to handle plea negotiations.

According to defense counsel's declaration in support of the petition, Judge McCarthy "did not have the papers to conduct the [section 995] hearing, but . . . he offered to conduct a pretrial conference in the case anyway." In a discussion in chambers, the parties agreed upon a disposition in which defendant would plead to one count of grand theft (Pen. Code, § 487, subd. (c)), imposition of sentence would be suspended, and probation would be granted with a search condition, a stay-away order, restitution to the victims, and service of six months in county jail. The agreement between counsel occurred after negotiation involving other terms and conditions, including an eight-month jail term. Defense counsel declares that in chambers "Judge McCarthy gave his blessing indicating he would be willing to accept such a plea." However, when the parties returned to the courtroom for entry of the plea, "Judge McCarthy told us to 'hold on' because he had to go to [Department 22] to get permission to take the plea." When Judge McCarthy returned, "he . . . said that he was not permitted to take the plea, but that the plea would go through as agreed upon. The only difference, he said, was that the plea would occur in Department 22 in front of Judge [Charles] Haines. [Judge Haines was in Department 22, which was also designated to handle plea settlement.]" In the reporter's transcript for the hearing, Judge McCarthy stated: "We are going to have to forthwith this matter to Department 22 where it will settle. [¶] . . . [¶] You'll get your deal."

Defense counsel further declares that when the parties appeared before Judge Haines they had a new pretrial conference at the judge's request, at which he informed them he would not accept the disposition unless it provided for eight months of jail time, rather than six. When they went on the record, defense counsel recounted what had transpired before Judge McCarthy and noted that he was "a Superior Court Judge here in the City and County of San Francisco." Judge Haines responded: "Judge McCarthy is not authorized to hear the pretrial . . . so that judge doesn't have the authority to okay the deal. It has to come through me or through Judge Breall [(Dept. 23 judge)]. That's by order of the Presiding Judge who assigns the cases through me. [¶] Judge McCarthy came over to see—he was trying to settle it. And I said we have to send it back to me, and we would take care of it. He told me he thought it would settle. And I independently looked at it, and I told you I'm not going along with the deal. . . . [¶] . . . [¶] There's no authority, except here or Department 23, to take the deal. [¶] Judge McCarthy knew it. That's why he came to see me."

Later in the hearing, after defense counsel referred to Judge McCarthy as "a court of identical jurisdiction," counsel and Judge Haines had the following exchange: "The Court: . . . [T]he law says the Presiding Judge has the authority to assign cases, and he assigns them here to Department 22 for certain purposes: to set trials, for . . . pretrials and motions generally. And I have been told by the Presiding Judge to keep the pretrials in Department 22

and Department 23, and I have been announcing that. [¶] [Defense Counsel]: Your Honor, we were in Department 24 for a 995. Sounds like the Presiding Judge is saying no other judge can reach a disposition in a case. [¶] The Court: Yes, that's exactly what he is saying. No more forum shopping—not that people are accused of doing that. But things will be pretried and pretried in the settlement department, and that's this department and Department 23. But that's exactly what he is saying. He has authority, as Presiding Judge, to do that."

As for his views on the merits of the case, Judge Haines said, "I didn't like the facts as I read them: a woman walking down the street, thrown to the ground, two people attacking—you know, that's a robbery. And he's getting a big, big break, a real big break, okay, to get a grand theft. [¶] . . . [A]nd there were two of them, you just have a weaker ID on the second. [¶] . . . [¶] . . . This is serious criminal behavior. People go to prison for this stuff. And robbers, by the way, generally do go to prison." The prosecutor said he had agreed to "the lesser . . . non-strike felony charge because there was no injury, no weapon this defendant used, and he is 18 with no record," and the judge responded, "That I understand. And that's the reason I said I would accept that disposition. . . . [¶] So I do believe in giving people a chance. But you know, I said what I said, this is serious stuff here."

The case was continued to the next week. Defendant did not accept Judge Haines's proposed disposition, and proceeded instead with the writ petition.

## B. *Judicial Assignment Procedure*

Respondent court's return to the order to show cause describes the procedure at issue, and its context, as follows:[1] "In January 2009, the Honorable James J. McBride became Respondent Court's presiding judge and the Honorable Charles F. Haines assumed the duties of supervising judge of the criminal division. . . . Supervising Judge Haines assigns most felony pretrial conferences to one of two departments: either Department 22, which is supervising Judge Haines's own department, or Department 23, the Honorable Susan M. Breall currently presiding. [¶] Prior to trial setting, the People and the Defense may present a plea in any appropriate department. But following trial setting, pleas are handled in Department 22 or the department assigned for purposes of the pretrial conference. If the parties reach a plea prior to the scheduled pretrial conference, they may appear in Department 22 or the assigned pretrial department. If the parties reach a plea after their pretrial conference, they may return to Department 22 or the

---

[1] Where the superior court's operating procedures are at issue, the court may properly appear to defend the merits of the challenged ruling. (*James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 280–281 [95 Cal.Rptr.2d 135].)

assigned pretrial department to present the plea. [¶] Supervising Judge Haines'[s] assignments are informed by recent reports of the Administrative Office of the Courts (AOC)."

Apart from Judge Haines's statements at the hearing in defendant's case, the only evidence in the record of the procedure in question is contained in a February 13, 2009 AOC report, which followed up on a March 15, 2007 AOC report respondent requested on its management of criminal cases.[2]

The 2007 report found that respondent's "timeliness of disposition for both felony and misdemeanor cases is well below the judicial branch's standards and the average performance of the superior courts as a whole." The 2007 report attributed the problem in part to the "decreasing seriousness of charges and sentences as cases age—a culture that encourages, and in fact requires, delay on the part of defense counsel to properly represent their clients. . . . The court does not have a process by which subsequent judges assigned to a case honor an indicated sentence established early in the life of the case." The report stated that "[c]ases are transferred with sufficient frequency that the public defender . . . asserts the right to file a [Code of Civil Procedure section] 170.6 challenge against any judge, including the judge to which the case was originally assigned, at the time of trial." The report advised: "Effective criminal case management requires that the prosecutor and the judges institute the policies needed to ensure that, barring extraordinary circumstances, the best sentencing deals are available early in the life of a case. . . . [¶] The supervising criminal judge, perhaps with the support and assistance of the presiding judge, will need to devote major efforts to proselytizing and training judges to understand the importance of this culture change and to monitor data showing the extent to which it is being followed."

The AOC returned at respondent's request in November 2008 to review respondent's implementation of the 2007 recommendations. The resulting February 2009 report found that the trial backlog "has gone down significantly since the beginning of 2008 for misdemeanors and since the middle of the year for felonies. The court's case processing policies, including its emphasis on post-information arraignment felony case settlement, have clearly been working." The 2009 report stated that one department "ha[d] been devoted to settling felony cases at the post-information arraignment stage," and that "[s]ince the time of our visit, the court has gone further— limiting to this department and the master calendar department the authority to provide an indicated sentence after the information arraignment." Respondent had instituted "a post-information arraignment settlement department to

---

[2] We hereby grant respondent's unopposed request to take judicial notice of these reports. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

attempt to settle felony cases that have entered the trial queue. Post-information settlements are now restricted to this department and the master calendar department to reduce the opportunity for judge shopping. . . . [T]hese changes are welcome; the court's leadership needs to ensure that they become fully institutionalized."

## C. Writ Proceeding

Defendant filed his petition for writ of mandate or prohibition and request for immediate stay, asking that respondent be directed to "cease enforcement of its new, unpublished rule forbidding plea agreements before all trial judges except two." We summarily denied the petition and request, and defendant petitioned for review. The Supreme Court issued a stay, granted review, and returned the matter to us with directions to issue an order to show cause.

## II. DISCUSSION

### A. Whether a Local Rule of Court Is Required

██ Defendant argues that the court was required to adopt a local rule for its process of assigning two judges to approve posttrial-setting plea agreements. A local rule of court must be approved by a majority of the judges of the court (Code Civ. Proc., § 575.1, subd. (a); see *Hall v. Superior Court* (2005) 133 Cal.App.4th 908, 915 [35 Cal.Rptr.3d 206] (*Hall*) [applying this statute in a criminal case]), and a local criminal rule must be distributed for comment to the Attorney General, and to the county bar association, district attorney, and public defender (Cal. Rules of Court, rule 10.613(g)(2)(B)).[3] Defendant contends that, because these and other requirements for promulgation of a local rule were not satisfied, the court's judicial assignment procedure is invalid. Respondent counters, and we agree, that the assignment procedure is authorized by existing law, and that no new local rule is required for its implementation.

The assignment procedure was instituted here by the presiding judge who, by statute and rule, has plenary authority over judicial assignments, as we now explain.

██ Government Code section 69508, subdivision (a) provides: "The judges of each superior court having three or more judges, shall choose from their own number a presiding judge who serves as such at their pleasure. Subject to the rules of the Judicial Council, the presiding judge shall

---

[3] Unless otherwise indicated, subsequent citations to rules are to the California Rules of Court.

distribute the business of the court among the judges, and prescribe the order of business." This statute was applied in *Anderson v. Phillips* (1975) 13 Cal.3d 733 [119 Cal.Rptr. 879, 532 P.2d 1247] (*Anderson*), a mandate proceeding, where the respondent presiding judge had refused to assign any duties to the petitioning judge because he believed that the judge's appointment to the court was no longer effective. The court concluded that the appointment remained in effect, and "although petitioner may not compel that judicial duties be assigned to him, he nevertheless is entitled to require respondent presiding judge to exercise his discretion to determine whether such assignments should be made." (*Id.* at pp. 735–736.) The court further observed: "Government Code section 69508 does not require that a presiding judge assign specific matters or any 'business' of the court to a particular judge. Assignments of the 'business' of the court among judges of the court is wholly discretionary." (*Id.* at p. 737.)

■ The presiding judge's full authority over judicial assignments is spelled out in rule 10.603. Rule 10.603(c)(1) confirms the presiding judge "has ultimate authority to make judicial assignments." Rule 10.603(b)(1)(A) and (B) authorizes the presiding judge to "[a]ssign judges to departments," "designate supervising judges for divisions," and "[a]pportion the business of the court, including assigning and reassigning cases to departments." Rule 10.603(c)(1)(D) directs the presiding judge to "[r]eassign cases between departments as convenience or necessity requires." Rule 10.603(d) permits the presiding judge to delegate any of the duties listed in the rule to another judge.

■ The presiding judge's full authority over judicial assignments extends to criminal cases. Rule 10.950 states the presiding judge "may designate supervising judges for the criminal division, but retains final authority over all criminal and civil case assignments." In this case, the presiding judge, James McBride, assigned Charles Haines as the supervising judge of the criminal division.

■ The presiding judge's authority over judicial assignments is supported by rule 10.608, which sets forth the duties of all judges. Under rule 10.608(1) and (5), each judge must generally "[h]ear all assigned matters," and must "[f]ollow directives of the presiding judge in matters of court management and administration, as authorized by the rules of court and the local rules and internal policies of the court." Under rule 10.603(c)(4)(A)(i), the presiding judge must notify the Commission on Judicial Performance of a judge's "persistent refusal to carry out assignments as assigned by the presiding judge," or "the directives of the presiding judge as authorized by the rules of court."

The judicial assignment authority of the presiding judge in this case further comports with and is confirmed by local rules of the San Francisco County Superior Court.[4] Local rule 2.0 states: "There are as many departments of this Court as there are judicial officers. The Departments include the Presiding Judge, Law and Motion (and Writs & Receivers), Juvenile, Criminal, Family Law, Discovery, Probate, and Complex Civil. The Presiding Judge will from time to time designate the classes of cases to be handled in the several courtrooms and designate the related departments." Under local rule 16.0, "[t]he Presiding Judge designates departments to hear criminal matters." The criminal division "include[s] a master calendar department" (the " 'Supervising Judge' "), who "assign[s] all felony trial matters and such other criminal matters as the Presiding Judge may direct." (Local rule 16.0B.)

■ The policy considerations underlying respondent's judicial assignment procedure are also firmly rooted in existing rules of court. The record indicates that the assignment procedure was instituted to help the court manage its criminal cases more efficiently and fairly. By centralizing responsibility for posttrial-setting plea agreement approvals, respondent sought, in its words, to "provide certainty regarding the plea forum and deny the parties the opportunity to 'shop' for a 'better' forum. As a result, there is no incentive to delay meaningful negotiations past the time of the pretrial conference." A presiding judge is required to take efficient court management into account in making judicial assignments. Under rule 10.603(a), the presiding judge "is responsible . . . for . . . allocating resources in a manner that . . . maximizes the use of judicial and other resources, increases efficiency in court operations, and enhances service to the public." ■ Judicial assignments must be informed by "[t]he needs of the public and the court, as they relate to the efficient and effective management of the court's calendar." (Rule 10.603(c)(1)(A)(i); see also local rule 16.5A & C [the court "holds meaningful pretrial conferences" in criminal cases to determine "whether a disposition without trial or hearing is feasible"].) Respondent's judicial assignment procedure was also established, in respondent's words, to promote "consistency across cases" as required by rule 4.115(a), which provides: "To ensure that . . . pretrial proceedings [in criminal cases] are handled consistently . . . [t]he presiding judge of a master calendar department must conduct or supervise the conduct of all . . . pretrial hearings and conferences . . . ." (See also rule 10.951(b) [the "presiding judge, supervising judge, or other designated judge must [in criminal cases] hear and determine any pretrial motions, preside over readiness conferences, and, where not inconsistent with law, assist in the disposition of cases without trial"], (c) [as "the business of the court requires, the presiding judge may designate

---

[4] We hereby take judicial notice of the local rules of the San Francisco County Superior Court. (Evid. Code, §§ 452, subd. (e)(1), 459, subd. (a).) All subsequent citations to local rules are to those of that court.

additional judges under the direction of the supervising judge to perform the duties specified in this rule"].)

■ The presiding judge thus was authorized under Government Code section 69508 and the foregoing court rules to implement the judicial assignment procedure without promulgating it as a local rule of court. ■ Defendant notes that rule 10.613, which specifies requirements for the adoption of local court rules, defines " '[l]ocal rule' " broadly to include "every rule, regulation, order, policy, form, or standard of general application adopted by a court to govern practice or procedure in that court or by a judge of the court to govern practice or procedure in that judge's courtroom." (Rule 10.613(a)(2).) However, the rule further states that, except for certain provisions involving effective dates, it "does not apply to local rules that relate only to the internal management of the court." (Rule 10.613(j).)

The judicial assignment procedure in question is a matter of internal court management, rather than a rule of practice or policy, within the meaning of rule 10.613. The assignment procedure is an allocation "of the 'business' of the court among judges of the court" over which the presiding judge has "wholly discretionary" authority. (*Anderson, supra,* 13 Cal.3d at p. 737.) The assignment procedure does not affect how parties are required to prosecute their cases; it merely governs who will hear them. As such, the assignment procedure is not an appropriate subject for rulemaking. As the presiding judges of the Superior Courts of Alameda, Contra Costa, and Napa Counties point out in their amicus curiae brief, because local rules must be approved by a majority of the judges of the court, rulemaking with respect to judicial assignments would give the judges a collective veto power over the assignments, a power antithetical to the presiding judge's authority in that area. Nor is it necessary or desirable to have the assignment procedure vetted by attorneys who practice before the court. The assignment procedure places no requirements on counsel, does not affect substantive rights of defendants, and involves a management prerogative of the presiding judge (rule 10.603(a), (a)(1) [presiding judge is responsible for "leading the court," and ensuring the court's "effective management and administration"]).

To require rulemaking with respect to individualized judicial assignments would also be bad policy. Respondent notes that superior courts, as courts of original and general jurisdiction (Cal. Const., art. VI, § 10), must have sufficient flexibility to respond on a daily basis to all types of cases. A presiding judge must be able, for example, to reassign judges from a civil department or division to a criminal department or division if the number of criminal filings increases. A rule of court such as the one defendant advocates here cannot be adopted overnight. (See, e.g., rule 10.613(g)(1) [45-day comment period].) To require a court rule for the judicial assignment

procedure in this case would call into question the scope of presiding judges' ability to make assignments that meet the courts' needs as their business evolves.

Defendant's contention that a local rule is required here under the reasoning of *Hall, supra,* 133 Cal.App.4th 908 is misplaced. In *Hall,* a supervising judge of the superior court directed a memo to attorneys stating that all motions were to be calendared and heard at least 30 days prior to the trial date. Citing "a local '30-day motion cutoff rule,'" the court refused to calendar the defendant's *Pitchess (Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) motion without a declaration demonstrating good cause. (*Hall, supra,* 133 Cal.App.4th at p. 913.) The Court of Appeal held that the court's "apparent practice of requiring all motions to be filed and heard 30 days before trial is the functional equivalent of a local rule and as such it is invalid because it was not properly promulgated or adopted in accordance with statute and the rules of court." (*Id.* at p. 914, italics & capitalization omitted.) The motion practice in *Hall* is readily distinguishable from the judicial assignment of cases challenged here because it placed requirements on counsel and governed how cases could be prosecuted. As previously noted, respondent's assignment procedure does not dictate practice before the court and only designates the judges who will determine particular matters.

Nor does the local rule involved in *People v. Cobb* (1983) 139 Cal.App.3d 578 [188 Cal.Rptr. 712] (*Cobb*), a case cited in the amicus curiae briefs filed in support of defendant by the California Attorneys for Criminal Justice (CACJ), and the California Public Defenders Association (CPDA) and the Public Defender of Ventura County (Ventura), assist defendant because it too is distinguishable on the same ground. In *Cobb,* pursuant to a local rule, the superior court declined to consider plea agreements after the pretrial readiness conference. (*Id.* at pp. 581–582.) The Court of Appeal upheld the local rule, with the understanding that the rule would "not preclude the exercise of discretion at any time under exceptional circumstances." (*Id.* at p. 585.) The assignment procedure here does not restrict the time within which plea agreements may be presented for approval, or the designated judges' discretion to approve them, but only involves the department to which the matter will be assigned.

For these reasons, we conclude that respondent's judicial assignment procedure was properly instituted without promulgation of a local rule of court.

## B. *Whether Respondent's Procedure Is Otherwise Lawful*

Local court policies and procedures, as well as local court rules, "are only valid to the extent they do not conflict with existing law." (*Hall, supra,* 133 Cal.App.4th at p. 916.)

Defendant maintains respondent's judicial assignment procedure conflicts with Code of Civil Procedure section 166, subdivision (a)(3), which provides that judges of the superior court may, in chambers, and with certain inapplicable exceptions, "[h]ear and determine all uncontested actions, proceedings, demurrers, motions, petitions, applications, and other matters pending before the court." Defendant argues that a presiding judge cannot by means of the case assignment procedure instituted here "take[] away the inherent power of each individual trial court of equal jurisdiction from entertaining dispositions which come before it." According to defendant, Judge McCarthy had discretion to approve his plea agreement notwithstanding respondent's judicial assignment procedure and abused that discretion by failing to exercise it and "blindly ced[ing]" his "inherent powers" to the presiding judge. (See, e.g., *Kahn v. Lasorda's Dugout, Inc.* (2003) 109 Cal.App.4th 1118, 1124 [135 Cal.Rptr.2d 790] [noting that the failure to exercise discretion is itself an abuse of discretion, and remanding to the trial court to exercise the discretion it did not know it enjoyed].)

We do not agree with defendant that judges have discretion to disregard a judicial assignment procedure instituted by the presiding judge. As we have observed, judges must hear all assigned matters and follow directives of the presiding judge in matters of court management (rule 10.608(1) & (5)), and are in fact subject to discipline for persistent refusal to do so (rule 10.603(c)(4)(A)). We also do not agree that respondent's judicial assignment procedure took away any inherent judicial power. (See 2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 226, p. 310 [whereas "probate and juvenile departments . . . are 'courts' exercising special statutory subject matter jurisdiction," "creation of ordinary departments for the convenient disposition of classes of cases does not, on any theory, involve a distribution of subject matter jurisdiction"], § 227, p. 312 ["[a]s between ordinary departments of the superior court, trial or hearing in the 'wrong' department is a procedural irregularity only"].) Because Judge McCarthy properly adhered to the assignment procedure by referring the case to Judge Haines for pretrial disposition, we have no occasion to consider "the effect of a trial judge's disregard of [the challenged] rule." (*Cobb, supra,* 139 Cal.App.3d at p. 585, fn. 3.)

Defendant also contends that respondent's judicial assignment procedure "conflicts with . . . the general rule that a judge may not overrule a judge of

equal authority." "[T]he power of one judge to vacate an order made by another judge is limited." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427 [125 Cal.Rptr.2d 526].) " ' "A superior court is but one tribunal, even if it be composed of numerous departments . . . . An order made in one department during the progress of a cause can neither be ignored nor overlooked in another department. . . ." ' [Citation.] This is because the state Constitution, article VI, section 4 vests jurisdiction in the *court*, '. . . and not in any particular judge or department . . . ; and . . . whether sitting separately or together, the judges hold but one and the same court.' " (*In re Kowalski* (1971) 21 Cal.App.3d 67, 70 [98 Cal.Rptr. 444].)

This principle has no application here. Respondent's judicial assignment procedure simply divides up the work of the court; it does not authorize any judge to overrule another. Moreover, no such overruling occurred in this case. Although Judge McCarthy indicated his approval of defendant's plea agreement, he did not take final action on the agreement by allowing defendant to enter a plea. He deferred to the judicial assignment policy and properly transferred the case to Judge Haines, who was free under the circumstances to take a different view of the proposed bargain. "The system of distribution of business among departments, particularly in the larger counties, often results in different departments properly hearing and determining different parts of an action or proceeding. . . . May the judge in the second department make a determination inconsistent with that of the judge of the first department? Clearly so. [¶] There is *no jurisdictional conflict* if the cause has actually been transferred to the second department, so that the first department is no longer exercising continuing jurisdiction. And the first determination of a preliminary or interlocutory matter . . . is not res judicata." (2 Witkin, Cal. Procedure, *supra*, Courts, § 233, p. 321.)

Amicus curiae CACJ contends that respondent's judicial assignment procedure "disaffecting the authority of judges to approve and accept valid plea bargains resulted in an arbitrary rejection of [defendant's] plea agreement in violation of due process." (See *People v. Smith* (1971) 22 Cal.App.3d 25, 30 [99 Cal.Rptr. 171] ["[a]lthough it is within the discretion of the court to approve or reject the proffered offer, the court may not arbitrarily refuse to consider the offer"].) This argument lacks merit because the judicial assignment procedure does not foreclose judicial consideration of any plea agreement; again, it only specifies the judges who are authorized to rule on those matters. As such, the procedure does not infringe on a defendant's due process rights. (Cf. *Hall, supra*, 133 Cal.App.4th at p. 920 [30-day motion cutoff policy "present[ed] the risk of impinging on a criminal defendant's right to a fair trial"].)

Amici curiae CPDA and Ventura argue the judicial assignment procedure violates Penal Code section 1192.5, which outlines the procedure for sentence

bargaining, because that statute "imposes no limitations on the *timing* of the conditional plea." Again, however, neither does the case assignment procedure in question. The procedure merely specifies which particular judges are authorized to entertain plea agreements at different stages of the case.

These amici curiae state that, in their experience, "many criminal defendants are not comfortable entering a guilty plea at the first few court appearances. However, as cases get assigned from courtroom to courtroom for various reasons, defendants sometimes will perceive that the judicial demeanor of a particular judge suggests that a plea before that judge will increase their chances for a fair disposition. This fact is no secret." They venture that "this aspect of human nature" was "embraced" in *People v. Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220] (*Arbuckle*), where the court observed that "[b]ecause of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea" (*id.* at p. 757), and that "a defendant's reasonable expectation of having his sentence imposed, pursuant to bargain and guilty plea, by the judge who took his plea and ordered sentence reports should not be thwarted for mere administrative convenience" (*id.* at p. 757, fn. 5). They argue that *Arbuckle* thus endorsed forum shopping in the context of criminal case settlements. (See *Arbuckle, supra,* at p. 758 (conc. & dis. opn. of Richardson, J.) [majority opinion "encourage[d] 'judge-shopping,' an undesirable practice that should be discouraged"].)

However, neither *Arbuckle* nor any other authority gives defendants the right to have their plea agreements approved by judges of their choosing. In this respect, defendant's situation is the same as that of the defendant in *People v. Coddington* (2000) 23 Cal.4th 529 [97 Cal.Rptr.2d 528, 2 P.3d 1081] (*Coddington*), who objected to the transfer of his case to another city for trial. Applying Government Code section 69508, the court held: "Defendants do not have the right to trial in a particular court within the district. The assignment of cases for trial is among the administrative responsibilities of the court." (*Coddington,* at p. 575; see also *Bryce v. Superior Court* (1988) 205 Cal.App.3d 671, 678–679 [252 Cal.Rptr. 443] [the court and not the parties dictates pretrial procedures].)[5]

CPDA and Ventura submit that "it is so essential that most cases settle before trial, 'judge shopping' is a tolerable evil." They believe that judicial assignment procedures such as the one respondent instituted here would discourage settlements and thereby "promote bankruptcy of the state." The assignment procedure was adopted to enable respondent to process its cases

---

[5] *Coddington* was overruled on another issue in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, footnote 13 [108 Cal.Rptr.2d 409, 25 P.3d 618].

more fairly and efficiently by providing consistency before two judges who preside over plea negotiations at a time and in a manner conducive to encourage disposition of criminal cases. If the procedure turns out to be counterproductive, the presiding judge has the flexibility to change it.

## III. CONCLUSION

The order to show cause is discharged. The petition for writ of mandate or prohibition is denied. The stay previously imposed by the California Supreme Court shall remain in effect until issuance of the remittitur.

Dondero, J., and Banke, J., concurred.

Petitioner's petition for review by the Supreme Court was denied July 14, 2010, S182758. Werdegar, J., was of the opinion that the petition should be granted.