Filed 5/23/24  Dilonell v. Chandler CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FRIDA DILONELL,<br><br>Plaintiff and Respondent<br><br>v.<br><br>SUZANNE CHANDLER,<br><br>Defendant and Appellant. | B329945<br><br>(Los Angeles County<br>Super. Ct. No. BC677717) |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Plotkin, Marutani & Kaufman and Jay J. Plotkin for Defendant and Appellant.

Peter D. Gordon & Associates and Andrew T. Schoettle for Plaintiff and Respondent.

———————————

This is the second appeal from an action originally begun in 2017 by plaintiff Alice Jackson, who sought partition by sale of a five-unit residential rental property in Inglewood in which she owned a 50 percent interest.[1]  Defendant Suzanne Chandler owned the other 50 percent interest.  In 2018, Jackson transferred her interest in the property to Frida Dilonell, who continued to pursue the partition action.

In the first appeal, we affirmed the trial court's ruling that the highest valid offer at the end of the court-ordered listing period was from a third party, not Dilonell.  (*Dilonell v. Chandler* (Mar. 23, 2022, B310695) [nonpub. opn.].)  On remand, the third party cancelled escrow.  Following a new listing period, the trial court found Dilonell made the highest valid offer and ordered Chandler to sign Dilonell's purchase agreement and complete the sale.

Chandler appeals from that order, contending the trial court abused its discretion in ordering her to sell her interest in the property to Dilonell, because Dilonell's purchase offer was not in compliance with the trial court's October 2, 2019, order and the trial court lacked authority to modify that order.  We affirm the trial court's order.

---

[1]    The appeals in this matter were preceded by a contract dispute between the parties, affirmed by our colleagues in Division Two (*Dilonell v. Chandler* (Oct. 24, 2018, B282634) [nonpub. opn.]), and paralleled by a probate action now itself on appeal in case No. B330813.  Both cases involve disputes about the ownership of the property.

## BACKGROUND

In June 2018, after Dilonell substituted in as plaintiff, she obtained an appraisal of the property at $960,000 and sought to buy Chandler's interest at the appraised value. Chandler brought two motions to have a partition referee appointed to list and sell the property. Chandler was concerned that a sale price based on an appraisal alone would not reflect the property's true value, which she believed to be about $1.5 million.

As relevant to this appeal, Judge Richard Burdge, Jr., sitting in Department 37, denied the motion for a partition referee and on October 2, 2019, issued the first order directing the sale of the property and specifying procedures for the sale. The order directed the parties to select a neutral third party broker and provided that the listing price would be determined by that broker. The order specified that "[a]ny written offer for less than the listing price shall require the written acceptance of both parties." The listing period was 90 days, but paragraph 9 of the order provided that if no offer at the listing price was received in the first two weeks of the listing, "either party can purchase the property at the listing price without any right of first offer or right of first refusal. If one of the parties is the successful purchaser, then that person need only close the escrow with one half of the agreed to sales price but all other expenses of the sale shall be paid equally by the parties." The trial court directed the parties to return to court if escrow had not closed in 90 days, for "purposes of the Court considering and making further orders in respect to the sale of the Property."

The broker listed the property for $1.5 million. After an extended six-month listing period, the highest third party offer was $1 million. On August 6, 2020, the court ordered the listing

3

period extended again, until January 1, 2021, at the lower price of $1.295 million. The court's order also provided: "After January 1, 2021, the highest outstanding valid offer shall be accepted."

As set forth in more detail in our prior opinion, in January 2021, the trial court determined that the highest valid offer was a third party offer from Abdul Sherriff (the Sherriff offer) for $1.050 million. The trial court found Dilonell's offer to be lower due to the form of her offer.[2] The court ordered the parties to accept the Sherriff offer. Dilonell appealed. We affirmed the trial court's order and remanded for further proceedings.

When the case was returned to the trial court, Judge Burdge had moved to another courtroom and Judge Killefer had been assigned to Department 37.

The parties signed the purchase agreement and opened escrow with Sherriff, but he cancelled the escrow apparently due to a then-pending probate action which challenged Dilonell's interest in the property. Dilonell represented to the trial court that she offered to buy the property for the same amount as Sherriff, but Chandler rejected this offer.

At a September 13, 2022, hearing, Judge Killefer directed the parties to follow the October 2, 2019, order, but added the condition that the parties could not select the same broker as before. The parties agreed to a neutral listing broker, who ultimately agreed that the listing price would be $1.125 million. The parties subsequently stipulated that the listing broker would

---

[2]     Briefly, the offer was from "Frida Dilonell on behalf of The Wood Property LLC" in the amount of $527,500 and read, intentionally or not, as an offer for the whole property.

have 60 days to market the property before either party could purchase the property by making a full price offer.

The highest offer received during the initial 60-day marketing period was $1,102,500.  Although the listing broker repeatedly urged Chandler to accept the offer, she refused.  The offer was withdrawn.

After the 60-day marketing period expired but before the 90-day listing period ended, Dilonell offered to buy Chandler's interest in the property for a price of $1.005 million for the whole property.  (Chandler would receive half that amount for her 50 percent share.)  The offer stated that escrow would close upon deposit of half the purchase price ($502,500) plus $16,000 due under a separate settlement agreement, for a total deposit of $518,500.

By the end of the listing period, there was only one third party offer, for a firm $1 million.  The listing broker suggested that the price be reduced to $1.1 million and the property continue to be marketed.  Chandler stated she did not want to reduce the listing price.

In her statement for the February 16, 2023, status conference, Chandler asked the trial court to continue the matter to allow the probate trial to conclude.  In her statement, Dilonell asked the trial court to deem her offer of $1.005 million the highest offer and to order Chandler to sign Dilonell's purchase agreement and complete the sale.

The court continued the status conference to April 5, 2023, to allow the probate trial to conclude.  At the same time, the court issued a tentative ruling granting Dilonell's request that Chandler be ordered to execute Dilonell's purchase agreement and complete the sale to Dilonell.  Before that hearing could take

5

place, Chandler filed a brief to which she attached a new third party offer for $1.049 million which she herself had obtained. Chandler asked the court to reconsider its tentative ruling and either order Dilonell to pay $1.049 million for the property or order the property be sold to the third party.

The probate action concluded on April 11, 2023, in favor of Dilonell. At the hearing on April 20, 2023, the trial court adopted its previously announced tentative decision and ordered Chandler to execute Dilonell's purchase agreement and complete the sale to Dilonell. This appeal followed.

## DISCUSSION

Chandler contends that Judge Killefer could not change Judge Burdge's October 2, 2019, order permitting Dilonell to close escrow with a deposit of 50 percent of the purchase price because, in the absence of a full price offer, "one trial court judge may not reconsider and overrule a ruling of another judge."[3] This is contrary to Chandler's position in the trial court, where she

---

[3] To the extent Chandler contends in her reply brief that the order permitted the parties to purchase the property only for the full list price, we disagree. We do not consider claims made for the first time in a reply brief. Further, Chandler has not cited any language from the order imposing such a restriction. The order in essence gives a party the right to purchase the property at full price if no full price offers are made in the marketing period, but the order in no way requires such an offer.

argued that Judge Killefer did have authority to change the order.[4]

We agree that, as a general rule, "the power of one judge to vacate an order made by another judge is limited." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.) We review a trial court's order to reconsider and vacate the ruling of another judge for an abuse of discretion. (See *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1247.) We see no abuse of discretion because we understand an exception to that rule, identified by Chandler in the trial court, to be applicable here: "[W]here the trial court's Order governs future events and circumstances render modification of the Order necessary or appropriate, the Court has the power to modify its Order. Specifically in a circumstance in which the trial court issues a judgment or order governing future actions and there exists a possibility of an unfor[e]seen change in circumstances over which the Court has no control, the Court retains the inherent authority to modify the judgment or Order (Restat.2d Judgments, section 73, com.b.)." We also agree with Chandler that "[b]ecause of the change of circumstances in this case by Mr. Sher[r]iff's cancellation of the escrow, and the passage of time since January[] 2021, and changes in market conditions, this is an appropriate case for the trial court to exercise its authority to modify its previous orders concerning the sale of the Property."

---

[4] We recognize Chandler does not agree with the specific "modifications" made by Judge Killefer, but that has no bearing on whether the trial court had the authority to modify the order.

Even if the exception were inapplicable, we would find that permitting Dilonell to close escrow with a 50 percent deposit did not amount to reconsidering, overruling, or vacating the October 2, 2019, order.  The interpretation of a court order is a question of law which we review de novo.  (*Dow v. Lassen Irrigation Co.* (2022) 79 Cal.App.5th 308, 326.)  As we noted in our opinion in the first appeal, the 50 percent escrow deposit provision expressly applies to a full listing price offer by a party.  The order is silent on escrow requirements when a party has made the highest offer for the property, but the offer is for less than the full listing price.  As we explained: "If we were to extrapolate from the court's order to other offers, we would find the most reasonable understanding would be that a party who makes an offer for the property need only deposit half the purchase price to close escrow." (*Dilonell v. Chandler*, *supra*, B310695.)  Thus, such a provision would be consistent with the October 2, 2019, order.  We previously noted that the trial court could make an order permitting a party to close escrow by depositing 50 percent of the purchase price, when the purchase price was less than the full listing price.  That, in effect, is what happened here.  The trial court ordered Chandler to accept Dilonell's offer, which included a provision allowing an escrow deposit of 50 percent of the purchase price.

Further, and perhaps more importantly, the October 2, 2019, order expressly contemplated that further orders would be necessary if escrow did not close within the specified 90-day listing period.  The October 2, 2019, order did not limit what additional orders might be needed.  Such a provision was just common sense in this case: if the property did not sell when marketed using the timeline and procedures in the order, an entirely different approach to the sale might well be necessary.

8

As Chandler acknowledged in the trial court, an order may properly contain such an express provision for future modifications.

When Judge Killefer took active control of the case on remand after Sherriff cancelled escrow, she had authority to devise a new approach to the sale under the further orders provision of the October 2, 2019, order. The fact that she initially directed the parties to follow the October 2, 2019, order did not negate that provision. Thus, her order permitting a 50 percent escrow deposit by Dilonell was actually authorized by the October 2, 2019, order, not contrary to it.

To the extent Chandler argues Judge Killefer abused her discretion in permitting a 50 percent deposit of the purchase price, we disagree. (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597 [standard of review for interlocutory partition order is abuse of discretion].)

The goal of a partition sale is to actually sell the property for a fair price in a limited period of time. In this case, the trial court's order that the parties use a neutral broker and list the property for sale was designed to ensure that the property was sold at a price determined by the market (and not an appraiser); this was done largely done in response to Chandler's concerns. There have now been two extended and impartial listing periods, and Dilonell was ultimately the high bidder for the property in both periods. She offered to match the Sherriff offer from the first listing period after Sherriff cancelled escrow. Chandler refused. Dilonell again emerged as the high bidder at the end of the second listing period, after Chandler refused a higher third party offer. At this point, the market has spoken. Facilitating the completion of the sale at this fair market price by requiring a

9

deposit of only 50 percent of the purchase price (the amount due to Chandler) is consistent with the goals of a partition action and the trial court's October 2, 2019, order, and is in both parties' best interests at this point.

Placing obstacles in the way of Dilonell's purchase is not in either party's best interest. Chandler expressly claims on appeal that requiring a deposit of the full purchase price would prevent Dilonell from purchasing the property, and that the late third party offer she somehow found would then become the high offer. She contends that the third party offer represents the true market value and it is only fair that the property be sold for this price. This is wishful thinking. The trial court rejected this late third party offer when it ordered Chandler to sign the purchase agreement for the Dilonell offer. We see no abuse of discretion in this decision, as the late third party offer clearly did not comply with the trial court's orders. Thus, if the Dilonell offer is withdrawn due to a pointless requirement that she deposit money owed to herself in escrow, the listing process will start all over again. There is absolutely no guarantee that a third listing period will result in a higher final offer than the current Dilonell offer as borne out by the fact that, so far, successive listings have resulted in lower final offers.

## DISPOSITION

The trial court's order is affirmed.  Appellant Chandler to bear costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

WILEY, J.