2/22/24

See Concurring and Dissenting Opinion

## CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re Samantha F., a Person Coming Under the Juvenile Court Law. | |
| | E080888 |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | (Super.Ct.No. INJ2100356) |
| Plaintiff and Respondent, | OPINION |
| v. | |
| John F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Natalie M. Lough, Judge. Reversed and remanded.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, and Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part D of the Analysis.

John F. (father) appeals from orders terminating parental rights over his young daughter Samantha F.  He argues the Riverside County Department of Public Social Services (department) did not sufficiently inquire into Samantha's possible Indian ancestry under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq.[1] We agree.  We reverse and remand for the juvenile court to ensure the department completes the ICWA inquiry.[2]

We publish part of this opinion intending to add two points to the ongoing discussion about the required scope of that inquiry, currently under review by our Supreme Court in *In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*), review granted July 26, 2023, S280572.  Specifically, we address the meaning of the terms "protective custody" and "temporary custody" as they are used in our dependency statutes, and the application of federal law to the ICWA inquiry.  This analysis provides additional reasons, beyond those persuasively articulated in *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), review granted September 27, 2023, S281447, and similar cases, why the Legislature did not intend the initial ICWA inquiry to differ depending on whether the child was removed from parental care with or without a warrant.

---

[1]  "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2]  In the nonpublished portion of this opinion, we hold that the juvenile court erred by refusing to allow father to testify or present evidence in support of his petition for reinstatement of reunification services.  We therefore also remand for an evidentiary hearing on father's petition.

# I. BACKGROUND

Samantha was born in 2021 and has three older siblings who are not involved in this appeal. During the dependency, mother and father repeatedly denied that Samantha had any Indian heritage. The record does not specify whether the department asked any other relatives about Samantha's possible Indian heritage.

In December 2021, the department took Samantha into protective custody pursuant to a warrant based on evidence she was endangered by maternal neglect and paternal criminal activity. During its investigation, the department learned that an older half sibling had stopped attending school and allegedly was "hanging out with" a 20-year-old man. Another older half sibling reported father was violent towards mother, including while she was pregnant with Samantha. Mother also told the department she had a history of intimate partner violence, including from father, and she was concerned father was using methamphetamine. Father at first denied any criminal history or drug use but then admitted he had used methamphetamine daily for almost three years. He refused a drug test and told the department he would take a drug test only under court order.

The department petitioned under Welfare and Institutions Code section 300[3] on Samantha's behalf, alleging, among other things, that mother and father had a history of domestic violence, mother had untreated mental health issues, and father struggled with

---

[3] Undesignated statutory citations refer to the Welfare and Institutions Code.

substance abuse.  At the detention hearing, the juvenile court detained Samantha from mother and father.  Paternal grandparents and a paternal aunt attended that hearing.

At the February 2022 jurisdiction/disposition hearing, the court sustained all the allegations in the amended petition and ordered reunification services for both parents.  Mother, father, and three paternal relatives attended the hearing.

In March 2022, the department placed Samantha with her paternal grandmother.  After nearly another year of reunification services, on February 28, 2023, the court adopted the department's recommendation and terminated father's parental rights.  Father appealed.

## II. ANALYSIS

Father argues the department failed to conduct a sufficient initial inquiry into Samantha's Indian heritage because it did not include extended family members.  The department argues its initial inquiry duty did not include asking extended family about Indian heritage because Samantha was initially removed by warrant.  We agree with father.

A. *Recent ICWA Initial Inquiry Caselaw*

ICWA establishes minimum national standards "for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  (25 U.S.C. § 1902.)  Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an

4

Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) Only the initial duty is at issue in this appeal.

The initial duty applies in every dependency. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see § 224.2, subd. (b).) It "begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) This means that the department has a duty to inquire about Indian heritage even when merely investigating an allegation, or when providing services to maintain a child in their home.

The initial duty expands under subdivision (b) of section 224.2 when a child is removed from their home, because such removal increases the possibility of "involuntary out-of-home placement" of Indian children. (§ 224, subd. (a)(1).) Under that provision, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," the department's obligation includes asking the "extended family members" about the child's Indian status.[4] (§ 224.2, subd. (b).) The Legislature added this language in Assembly Bill No. 3176 (2017-2018 Reg. Sess.), which made ICWA-related changes to the Welfare and Institutions Code, effective January 1, 2019. (Stats.

---

[4] Section 224.2, subdivision (b), also applies when a child is placed in the temporary custody of a county probation department under section 307. (See § 224.2, subd. (b).) The Legislature may have intended the section *not* to apply if a county department temporarily assumes custody of a child under section 301 in a voluntary removal that is designed to provide services to maintain the family. (See § 16507.4.)

5

2018, ch. 833, § 5.)  The Judicial Council revised rule 5.481 of the California Rules of Court to implement section 224.2, subdivision (b), by requiring inquiry of extended family in every case in which the department seeks to place the child:  "The party seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, *extended family members*, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ."  (Cal. Rules of Court[5], rule 5.481(a)(1), italics added.)

Opinions from our division disagree on whether that rule of court correctly interprets the statute by requiring the department to inquire of extended family members in every case where a child is removed from home.  *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743, held the statute requires the department's inquiry to include extended family members only when the child is taken into custody without a warrant.  *Robert F.* reached that conclusion by following the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*).  *Adrian L.*, in turn, reached that conclusion by limiting the phrase " 'placed into the temporary custody of a county welfare department pursuant to Section 306' " (*Robert F.*, at p. 500) to the exercise of the department's authority "to take children into temporary custody 'without a warrant' in certain circumstances."  (*Robert F.*, at p. 497; see *Adrian L.*, at pp. 357-358 (conc. opn. of Kelley, J.).)  *Robert F.* adopted the *Adrian L.*

---

[5]  Undesignated rules references are to the California Rules of Court.

concurrence's view that "[a] department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306." (*Robert F.*, at p. 497.) Later, *Ja.O.*, *supra*, 91 Cal.App.5th at pp. 677-678 adopted that reading of section 224.2, subdivision (b). Yet another opinion then disapproved of rule 5.481 to the extent that it required an extended family inquiry in cases where the child was removed by warrant. (*In re Andres R.* (2023) 94 Cal.App.5th 828 (*Andres R.*), review granted Nov. 15, 2023, S282054.)

Unlike these cases, *Delila D.*, *supra*, 93 Cal.App.5th 953, found *Robert F.*'s statutory interpretation "contrary to both the letter and spirit of Assembly Bill 3176." (*Delila D.*, at p. 962.) *Delila D.* reasoned that because section 306, subdivision (a)(1), grants the department the authority to "receive and maintain" temporary custody of a child when "delivered" to a social worker by law enforcement, temporary custody includes children brought to the department after removal by a warrant. (*Id.* at pp. 971-972.) Thus, *Delila D.* held "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Ibid.*) Under *Delila D.*, section 224.2, subdivisions (a) and (b), as well as rule 5.481, social workers have "a duty of initial inquiry that begins at first contact, lasts throughout the proceeding, and includes 'but is not limited to' the reporting party, the child's parents and extended family members, and others who have an interest in the child, as those individuals become available during the case." (*Delila D.*, at p. 966.) Four opinions from other divisions have followed *Delila D.* (See *In re C.L.*

7

(2023) 96 Cal.App.5th 377; *In re Jerry R.* (2023) 95 Cal.App.5th 388; *In re V.C.* (2023) 95 Cal.App.5th 251; *In re L.B.* (2023) 98 Cal.App.5th 512.)

This conflict in authority is under review by our Supreme Court, with *Ja.O.* as the lead case. We find *Delila D.*'s thoughtful discussion of the statutory language and legislative history persuasive and adopt its reasoning and conclusions.

We also conclude there are at least two other reasons for rejecting *Robert F.* beyond those discussed in *Delila D.* First, *Robert F.* misconstrues "protective custody" as exclusive of "temporary custody" in categorizing children removed by warrant as not in temporary custody before their detention hearing. Second, *Robert F.*'s interpretation misconstrues federal ICWA law as supporting its view that the ICWA inquiry differs based on whether a child is removed by warrant. Accordingly, we explain our view on this issue of continuing public interest.

B. *The Terms "Protective Custody" and "Temporary Custody" Refer to All Children in Pre-Detention Custody*

Section 224.2, subdivision (b), starts the duty to inquire of extended family when children are removed from their parents and enter a county's temporary custody prior to the detention hearing. In holding that the duty does not apply to children removed by warrants, *Robert F.* and similar cases construe the term "protective custody" to be a status that is exclusive of "temporary custody." This is not how the statutes use these terms.

"Temporary custody" is the term used in section 306 for children in a dependency proceeding who are being held by a department before their initial hearing, known as a

8

detention hearing.  Children removed by warrant under section 340 are placed into the "temporary custody" of a department under section 306.  Under section 340, children removed by warrant "shall immediately be delivered to the social worker."  (§ 340, subd. (c).)  That language dovetails with section 306, subdivision (a)(1), under which children "delivered by a peace officer" are received and maintained in "temporary custody" by the department.  Once an officer delivers a child to the social worker, the department maintains the child in temporary custody per section 306, subdivision (a)(1).

Children can be placed in temporary custody two other ways.  In some circumstances, a peace officer may take a minor into "temporary custody" without a warrant and contact the department to "assume custody" of the child.  (§ 305, subd. (a).)  Such a child would be received and maintained in temporary custody under section 306, subdivision (a)(1), like those delivered after execution of a warrant.  Also, a social worker, acting without a warrant and without the involvement of a police officer, may take a child into "temporary custody" under specified circumstances.  (§ 306, subd. (a)(2).)  In each of these circumstances, when children are first removed from their parents, they are in "temporary custody" until their hearing. The important point is that—no matter how they are placed in the department's custody before a detention hearing—children removed from home before a detention hearing are treated identically

both under the statutes and in practice.  The statutory interpretation could stop here:  all children awaiting a detention hearing are in the department's "temporary custody."**6**

The *Robert F.* line of cases from our court, however, prompts us to say more.  Under that line of cases, "children in protective custody under section 340" are not "in temporary custody within the meaning of section 306(a)(1)."  (*Andres R.*, *supra*, 94 Cal.App.5th at p. 856.)  We find this distinction unconvincing.  The terms "protective custody" and "temporary custody" are not exclusive of each other.  Referring to children removed by warrant as being in "protective custody" makes sense because the warrant is called a "protective custody warrant" and is the type of warrant issued in dependency proceedings.  By contrast, the type of warrant issued in delinquency proceedings is called an "arrest warrant."  Protective custody is a general term used for various individuals (including children, witnesses, and the mentally infirm) who are in custody for their safety.  Such custody can be contrasted with "custody pending trial," which is reserved for those held pending a trial for their wrongdoing.

In dependency proceedings, children removed without a warrant are *also* described as being in "protective custody."  Indeed, article 7 of the Welfare and Institutions Code, which houses section 306, refers to children placed in temporary custody under section 306 as being in "protective custody."  The statute directs that when an authority "takes into *temporary* custody" a minor under the sections (305 through 307)

---

**6**  For the duty to inquire of extended family, rule 5.481(a)(1) fills a statutory gap by requiring that inquiry in the relatively small number of cases where children never enter temporary custody but are ordered into detention at the initial hearing.

10

that authorize removals without warrants, the authority must inform the parents that the child "has been taken into *protective* custody." (§ 307.4, subd. (a), italics added.) Accordingly, all children in temporary custody are in protective custody, that is, custody for their safety.

Thus, as the term is used in section 306, "temporary custody" does not stand in opposition to "protective custody." Rather, the term reflects that a child is being held for a short period before a detention hearing, something distinct from, though overlapping with, protective custody. This custody is temporary because after the detention hearing the child is either returned to their parents or detained on a non-temporary basis, until otherwise ordered by the juvenile court. Children removed with and without warrants are treated identically in this process.

In this vein, though article 7 contains all its sections under the heading "temporary custody and detention," it still refers to "protective custody" to include children in custody without a warrant. A medical examination is required when a child who is allegedly a victim of physical or sexual abuse "is taken into *protective* custody." (§ 324.5, subd. (a), italics added.) No one would read that provision as applying only to children removed by warrant. Again, "temporary custody" while a child awaits a detention hearing *is* "protective custody," since the children are in custody for their safety.

Interpreting "protective custody" as a status exclusive of "temporary custody" also creates discord with other provisions. For example, section 306, subdivision (d), enacted

by Assembly Bill No. 3176 (Stats. 2018, ch. 833, § 19), obviously applies to all children in pre-detention custody, and it uses the term "temporary custody." That subdivision requires quick contact of tribes where they may have exclusive jurisdiction over a removed child. It requires that "[i]f a county social worker takes or maintains an Indian child into temporary custody under subdivision (a), and . . . knows or has reason to believe," the child is domiciled on a reservation, or is a ward of a tribal court, the department must "notify the tribe that the child was taken into temporary custody no later than the next working day" (§ 306, subd. (d))—to vindicate the tribe's rights. Because tribes have exclusive jurisdiction over such children pursuant to 25 United States Code section 1911, the provision was intended to apply to all such children in pre-petition removal, regardless of how removed. Whether the child was removed by warrant has nothing to do with the tribe's exclusive jurisdiction over such a case. The Legislature's use of the term "temporary custody" in section 306, subdivision (d), further indicates that it views those children delivered after removal by warrant to be in temporary custody under section 306. The alternative interpretation—that section 306, subdivision (d), applies only to children removed without warrants—is not a tenable construction of a provision concerning tribal exclusive jurisdiction.

Yet another provision provides parental notification procedures for "custody pursuant to this article" that would not sensibly be read to exclude those brought into custody by warrant. (§ 308, subd. (a).) Under still another provision, at a detention hearing where there is reason to know a child is Indian, the department must provide a

12

report accounting for the circumstances causing the child to be taken into "temporary custody." (§ 319, subd. (b)(7).) That again indicates that the Legislature views all children held before that hearing as being in temporary custody.

"Temporary custody" is also used outside article 7 in ways that would lead to absurd results if interpreted as exclusive of "protective custody." For example, the dependency statutes regulate how a minor in "temporary custody" can be housed with adults. (§ 206.) It is not plausible that the Legislature intended to exclude from that regulation minors who are housed after they were removed by warrant, on the view that those minors are in "protective custody" rather than "temporary custody." (See § 369, subd. (a) [procedures for medical, surgical, or dental care for those in "temporary custody under Article 7" with no provision referring to protective custody]; Health & Safety Code, § 121020, subd. (a)(3)(A) [HIV test authorization for infants taken into "temporary custody pursuant to Article 7" with no reference to protective custody].)

In addition, Department of Social Service (DSS) regulations indicate how the terms "temporary custody" and "protective custody" are applied in practice. Though revised extensively after Assembly Bill 3176 in 2018, those regulations use the term "temporary custody" for when a child has been involuntarily removed from parents. (See DSS Regs. 31-131.10; 31-135.12; 31-135.4; 31-136.31.) They contain no separate procedures for handling children removed by warrant and without a warrant. Nor do they contain any separate procedures for "protective custody." All children awaiting their detention hearing are treated as in "temporary custody." In fact, the regulations contain

13

only one use of the term "protective custody," and it uses the term for all children in dependencies.  A regulation states that when a social worker receives information that a child in "temporary custody" is in the exclusive jurisdiction of a tribe, the social worker is to notify the tribe.  (DSS Reg. 31-136.31.)  The regulations then require the agency to advise the tribe "that the child has been taken into *protective custody*."  (DSS Reg. 31-135.235, italics added.)  That these regulations use "protective custody" for all children in temporary custody further confirms that they are not exclusive categories.

Moreover, in the statement of reasons issued in promulgating the rules, DSS referred to children as being in "temporary protective custody," and said the regulation was amended to conform "to the 2018 amendments made to WIC sections 305.5 and 306."  (Initial Statement of Reasons for DSS Reg. 31-136.31.)  The Legislature also used that combined term—"temporary protective custody"—when it enacted section 340's provision authorizing pre-petition warrants.  (See Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1401, proposed amendment Apr. 18, 2017, at p. 1 [caption containing "temporary protective custody" as the key issue and using the term "temporary protective custody" three times in the first paragraph of the bill's synopsis].)[7]

In all, it is hard to imagine that when the Legislature enacted Assembly Bill 3176 in 2018 it could have had in mind a construction of the statute where children removed by

---

[7] The same legislative report referred to regulations that allow social workers "to act pursuant to Section 306 when they take minors into *protective custody* without a warrant."  (See Assem. Com. on Judiciary, Rep. on Assem. Bill 1401, proposed amendment Apr. 18, 2017, at p. 4, italics added; see also Assem. Floor Rep. on Assem. Bill No. 1401, as amended Aug. 23, 2017, at p. 4 [same].)

protective custody warrant are not in "temporary custody" under section 306, subdivision (a)(1), when delivered to agency social workers. To our knowledge, that view does not appear in any legislative history of the bill; in the later rulemaking for rule 5.481 (which requires extended family inquiry in all cases); or in the yet later rulemaking for DSS regulations that require county departments to inquire of extended family members about a child's Indian heritage in "all referrals" and "all investigations" (DSS Regs. 31-101.11; 31-125.225). It also seems never to have been suggested by any court case, policy paper, or commentary of any sort until surfacing in the December 2022 concurrence in *Adrian L.*, *supra*, 86 Cal.App.5th at pp. 353-374. Even the county child welfare department involved in *Adrian L.* was concerned that interpreting section 224.2, subdivision (b), to exclude children removed by warrant " 'does nothing to further the spirit or purpose' " of ICWA and " 'may lead to absurd results.' " (*Adrian L.*, at p. 369.) We should not, and cannot, conclude the Legislature had this statutory construction in mind in 2018.

C. *The Role of Federal Law*

In our view, no deep look at federal law is needed to understand our Legislature's decision to require that departments inquire of a child's extended family as part of the initial inquiry into whether a child being removed from parents is Indian. Federal guidance recommends that states inquire of extended family in emergency proceedings, consistent with our Legislature's decision.

At the heart of the *Adrian L.* concurrence, however, is an erroneous claim that federal ICWA law counsels for inquiries into extended family only when a child is

15

removed without a warrant. Permeating the concurrence is a misunderstanding of how federal ICWA law applies to the removal of Indian children from their parents before a dependency petition is filed. The concurrence reasons that under federal law, only a warrantless removal of an Indian child constitutes an "emergency removal." It then uses this purported federal distinction to support its view that section 224.2's reference to "temporary custody" refers to warrantless removals only.

There is no room for any such distinction in federal law. Any pre-petition removal of an Indian child in a dependency case is an "emergency removal."

Under ICWA, there are only two ways an Indian child can be removed from their parents and placed with another custodian: in a "child-custody proceeding" or in an "emergency proceeding." (25 C.F.R. § 23.2 (2023).) The former requires a set of ICWA protections (see 25 C.F.R. §§ 23.111, 23.120-23.122 (2023)), while the latter occurs "without the full suite of protections in ICWA." (Executive Summary, Dept. of the Interior, 81 Fed. Reg. at 38778, 38794 (2016) (Interior Dept. Rules).) As we will discuss, *all* pre-petition removals of Indian children are emergency removals, and the ensuing dependency proceedings are, at least at first, emergency proceedings under ICWA. When a child is removed before a petition, the department cannot comply with the full ICWA requirements, and the only other option in federal law is an "emergency proceeding." There is simply no room in federal law for the view espoused in the *Adrian L.* concurrence.

1. *Child-Custody Proceedings and Emergency Proceedings Under ICWA*

In ICWA, Congress sought to protect Indian children and promote the "stability and security of Indian tribes and families" by establishing minimum standards "for the removal of Indian children from their families" and the placement of those children in homes that would reflect the values of Indian culture. (25 U.S.C. § 1902.) ICWA contains provisions governing, among other things, tribal jurisdiction over child-custody proceedings (25 U.S.C. § 1911), the conduct of such proceedings (25 U.S.C. § 1912), and the placement of Indian children (25 U.S.C. § 1915).

ICWA defines a " 'child-custody proceeding' " to include an action that could require the placement of an Indian child in a foster home or institution. (25 U.S.C. § 1903(1)). One ICWA protection for the removal of an Indian child in a child-custody proceeding makes it easy to see why a California pre-petition dependency removal cannot meet the standards for such a proceeding. That is, Indian children may not be removed from their parents and temporarily placed elsewhere until after *10 days*' *notice* to their tribe. (25 U.S.C. § 1912(a); see 25 U.S.C. § 1903(1)(i) [defining " 'foster care placement' "].)

In a California dependency case where an Indian child is removed from her parents before a petition is filed, it is impossible to comply with that notice requirement around the time of removal. A detention hearing on the removal is required soon after the child is taken from the parents, well before 10 days have passed. (See § 315.) If a police officer or social worker removes a child from a home—with or without a

17

warrant—and learns then that the child is Indian, there is not enough time to give 10 days' notice to the child's tribe before the detention hearing. An Indian child simply cannot be removed pre-petition in compliance with the ICWA protections for a child-custody proceeding.[8]

But, of course, federal law does permit the pre-petition removal of an Indian child in a California dependency case. Congress wished to ensure states could act temporarily to protect Indian children when ICWA's child-custody case procedures cannot be met. "[N]othing in this [child-custody proceedings subchapter]" of ICWA should prevent state authorities from performing an "emergency removal" of an Indian child from the parents. (25 U.S.C. § 1922.) However, for the state to perform an emergency removal, the child must face "imminent physical damage or harm." (25 U.S.C. § 1922.) "[T]he immediacy of the threat is what allows the State to temporarily suspend the initiation of a full 'child-custody proceeding' subject to ICWA. . . . Congress used the standard of 'imminent physical damage or harm' to guard against emergency removals where there is no imminent physical damage or harm." (Interior Dept. Rules, 81 Fed. Reg. at 38794.) "ICWA allows for removal of a child from his or her parents or Indian custodian, as part

---

[8] It may be as difficult to comply, in the short time before a detention hearing, with ICWA's requirement that an Indian child's removal include *expert testimony* about the damage the child will face by remaining with her parents. (25 U.S.C. § 1912(e); 25 C.F.R. §§ 23.121-23.122 (2023).) It may be yet more difficult to comply with California's further requirement that the expert be qualified to testify as to "the prevailing social and cultural standards of the Indian child's tribe." (§ 224.6, subd. (a).) Apart from dependency cases, there may be placements of Indian children under California laws that could comply with full ICWA protections from the outset, such as guardianships, conservatorships, custody under Family Code section 3041, or adoption under Family Code sections 8500-9340].)

of an emergency proceeding only if the child faces 'imminent physical damage or harm.' " (U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), C.2, p. 23 (BIA Guidelines) <https://www.bia.gov> [as of Feb. 21, 2024].) Accordingly, under California law, a court can detain an Indian child at a detention hearing only upon a showing that detention is necessary to prevent imminent physical damage or harm. (§ 319, subd. (d); see DSS Regs. 31-120.2, 31-125.226.)

Federal law, then, makes a "distinction between the requirements for emergency proceedings and other child-custody proceedings." (Interior Dept. Rules, 81 Fed. Reg. at 38779; see 25 C.F.R. § 23.103 (2023) [ICWA applies in the two situations]; section 224.1, subd. (d)(1) [similar].) An "[e]mergency proceeding" under ICWA is "any court action that involves an emergency removal or emergency placement of an Indian child." (25 C.F.R. § 23.2 (2023).) Although an Indian child's removal in a child-custody proceeding must satisfy the full set of ICWA protections (such as 10 days' notice), the removal in an emergency proceeding need not do so. However, in that case the removal can occur only if the child faces "imminent physical damage or harm." (25 U.S.C. § 1922.) While federal regulations enumerate 10 items that should be alleged in a petition for emergency removal of an Indian child, a list substantially adopted by our Legislature (25 C.F.R. § 23.113(d) (2023); § 319, subd. (b)), federal guidelines nonetheless state that the essential showing for an emergency removal is that the child faces imminent physical damage or harm. (BIA Guidelines C.4, p. 27 ["A failure to

19

include any of the listed information should not result in denial of the petition if the child faces imminent physical damage or harm."].)

The length of an emergency proceeding is limited by two things. First, it "immediately terminates" if there is no longer "imminent physical damage or harm to the child." (25 C.F.R. § 23.113(b)(4) (2023); see BIA Guidelines C.5, p. 27 [removal "must not extend for longer than necessary to prevent imminent physical damage or harm to the child"].) Accordingly, until disposition of a dependency case involving an Indian child, parties may request an ex parte hearing to seek a determination that return to the parents is required because there is no longer "imminent physical damage or harm to the child" from the parents. (§ 319.4.)

Second, federal regulations require "some kind of time limit on the length of an emergency proceeding," so ICWA protections are not "evaded by use of long-term emergency proceedings." (Interior Dept. Rules, 81 Fed. Reg. at 38817.) At that point, the state must make the ICWA showing necessary for a child-custody proceeding. (See 25 C.F.R. § 23.113(c) (2023); BIA Guidelines C.3, p. 24.) Under California law, the " '[e]mergency proceeding' in the case of an Indian child is a hearing pursuant to Welfare and Institutions Code section 319"—i.e., the detention hearing. (DSS Reg. 31-002(e)(6); § 224.1, subd. (d)(1).) The emergency proceeding then terminates when the case is resolved with either the return of the child to the parents, the transfer of jurisdiction to a tribe, or the case reaching the stage where the county recommends a final

disposition of removal per sections 360 *et seq.*[9]  At that point, if an Indian child has been removed from their parents, the emergency proceeding would end, with the county required to comply with all the ICWA protections for a child-custody proceeding, including 10 days' notice to the tribe, to sustain the removal.  (See BIA Guidelines C.3, p. 25 ["actual placement of the child" need not change when an emergency proceeding becomes a child-custody proceeding].)

In short, all pre-petition removals of Indian children in dependency cases are emergency removals that fall squarely into this complex federal and state law scheme. There is no room for viewing removals by warrant as some other kind of proceeding.

2. *Initial Inquiry Under Federal Law*

Though the ICWA statute and its procedures about "child-custody proceedings" and "emergency proceedings" apply only if an *Indian* child is removed, there is one part of ICWA procedure that applies in *any* case where a child is being removed from his parents:  the inquiry to determine whether the child is an Indian child.

The federal regulations "clarify the minimum Federal standards" governing implementation of the ICWA.  (25 C.F.R. § 23.101 (2023).)  A regulation governing the initial ICWA inquiry (25 C.F.R. § 23.107(a) (2023)) places the burden on the court.  It

---

[9]  "In the case of an Indian child, any order detaining the child pursuant to this section shall be considered an emergency removal within the meaning of Section 1922 of the federal Indian Child Welfare Act of 1978.  The emergency proceeding shall terminate if the child is returned to the custody of the parent, parents, or Indian custodian, the child has been transferred to the custody and jurisdiction of the child's tribe, or the agency or another party to the proceeding recommends that the child be removed from the physical custody of their parent or parents or Indian custodian pursuant to Section 361 or 361.2." (§ 319, subd. (i).)

21

states that for all proceedings—whether emergency or otherwise—the court must ask each participant on the record whether the participant knows (or has reason to know) that the child is Indian. (25 C.F.R. § 23.107(a) (2023).) The court must instruct "the parties" to inform the court if they later receive information that the child is Indian. (*Ibid.*) This is the entire *initial* inquiry duty under either the federal statute or the Code of Federal Regulations for all proceedings. It includes no duty to ask extended family members.

The BIA Guidelines provide "examples of best practice" for states. (BIA Guidelines "Purpose of These Guidelines," at p. 4.) The BIA Guidelines state it is "critically important" to inquire into whether the child is Indian as soon as possible, and it places the duty on state agencies as well as courts. (BIA Guidelines B.1, p. 11.)

Initial inquiry of extended family is mentioned in federal law only in the BIA guidance on emergency proceedings and only once. In interpreting the regulation that lays out the standards for emergency proceedings (25 C.F.R. § 23.113 (2023)), BIA Guidelines section C.7 offers three sentences about "Identifying Indian children in emergency situations." (*Id*. at p. 28.) Only the first sentence concerns the initial inquiry, and it recommends querying extended family: "It is recommended that the State agency ask the family *and extended family* whether the child is a Tribal member or whether a parent is a Tribal member and the child is eligible for membership as part of the emergency removal and placement process." (BIA Guidelines C.7, p. 28, italics added.) If an Indian child is identified in any California pre-petition removal, an emergency proceeding and its standard is required, so the recommendation of BIA Guidelines

22

section C.7 applies to all pre-petition removals.  Whether or not the child was initially removed by warrant, the same standard will apply to detain an Indian child.

3.  *The Adrian L. Concurrence's Error Relating to Emergency Removal*

The *Adrian L.* concurrence fails to understand that *all* California pre-petition removals of Indian children are emergency removals under ICWA.  The *Adrian L.* concurrence argues that under "federal ICWA law . . . a removal under section 306 [without a warrant] is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 [the warrant provision] is not."  (*Adrian L.*, 86 Cal.App.5th at p. 357 (Kelley, J., concurring).)  According to the concurrence, the California Legislature intentionally distinguished between those removed via protective custody warrant and those removed otherwise to "align[] [California law] with federal ICWA guidance."  (*Ibid.*; see *id.* at p. 361 [purported "narrow requirement of specific inquiry that paralleled federal guidelines issued in 2016"]; *id.* at p. 363 [federal guidance "describes precisely the circumstance" of removals without a warrant]; *id.* at p. 364 [our Legislature "tracked federal guidelines for emergency removals"]; *id.* at p. 367 [Legislature was "[c]hoosing to follow the BIA Guidelines" in applying extended family inquiry to only warrantless removals]; *id.* at p. 368 ["alignment with the narrow federal guidance"]; *id.* at p. 369 [Legislature "closely tracked the relevant federal guidance on emergency removals" with a distinction that "maps precisely onto the recommended

23

federal guidance"]; *id.* at p. 372 ["construction" had a "genesis in [the] federal ICWA guidance"].)[10]

But the distinction the concurrence purports to rely on does not exist in the federal statutes, regulations, or guidance.  As described above, federal law provides exactly two authorized ways to remove an Indian child from parents, either (1) through an Indian "child-custody proceeding" while meeting the full standards in ICWA, including 10 days' notice to the tribe and expert testimony per 25 U.S.C. § 1912, or (2) through an "emergency removal" where a child faces "imminent physical damage or harm" (25 U.S.C. § 1922).  The point of the latter standard is that "Congress established a high bar for emergency proceedings that occur without the full suite of protections in ICWA." (Interior Dept. Rules, 81 Fed. Reg. at 38794.)

If a child is identified as Indian, *any* way that the child is removed pre-petition in a California dependency case must satisfy the emergency removal imminence standard; otherwise, the removal violates ICWA.  Because the detention hearing must be held quickly, the removal cannot satisfy ICWA's standards, including the 10 days' notice to the tribe.  Thus, if state officials discover a child they are removing is Indian, the state officials must satisfy the emergency removal standard, regardless of whether a warrant is involved.  (See, e.g., section 306, subd. (c) [temporary custody is an emergency removal]; section 224.1 [describing section 319 as an emergency proceeding]; section 319,

---

[10]  The *Adrian L.* concurrence's view on federal law has been repeated in other opinions.  (See *Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503; *Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851.)

subd. (d) [emergency removal standard for detention hearing involving an Indian child].) There is no room in the federal scheme for the *Adrian L.* concurrence's interpretation of the removal of an Indian child by warrant as being neither a "child-custody proceeding" nor an "emergency proceeding."

The *Adrian L.* concurrence's primary reason for reading federal law the way it does is that a removal by warrant "under section 340, with its lower standard, would not be an 'emergency removal' under federal law." (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 363-364 [Kelley, J., concurring].) The concurrence finds a warrant removal "fundamentally different" because a section 306 removal by a social worker without a warrant requires imminent physical damage or harm but "section 340 does not have such a strict standard." (*Adrian L.*, at p. 357.) Instead, a warrant is authorized if there is " 'substantial danger' " to the physical *or emotional* health of the child. (*Ibid.*) A warrant "thus requires neither imminent nor physical harm." (*Ibid.*) The concurrence finds this "significant" difference means a section 306 removal without warrant "is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 is not." (*Adrian L.*, at p. 357.)

This reasoning is precisely backwards. Under federal law, in both circumstances (warrant or not) the pre-petition removal of an Indian child must satisfy the federal emergency removal standard. In either situation (warrant or not), the agency may (or may not) be able to show at the detention hearing that the standard is met.

25

It is true that the section 306 standard for warrantless removals by a social worker resembles the "imminent physical damage or harm" needed for the emergency removal of an Indian child. But this simply means that, should a removed child turn out to be Indian, the agency would have been applying the proper standard since removal from the parents. The warrant standard is lower, but that just means that if from the start there is reason to believe a child is Indian, the lower warrant standard should not be used. In rulemaking, in fact, the Department of Interior addressed a public comment observing that some states had looser removal standards by pointing out that whatever standard the state has, the removal must immediately end if an Indian child does not face "imminent physical damage or harm."[11] The federal emergency removal standards apply in the same way to all removals in California, whether or not removal is by warrant.

The *Adrian L.* concurrence also observes that the BIA guidance characterizes emergency removals as " 'without court authorization' " (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 362-363), yet a warrant is court authorization. The BIA's description of emergency removals as lacking court authorization is no more than a reflection of the

---

[11] "The Department recognizes, however, that a State may have a different or broader basis for immediate removals and placements. Regardless of how the State defines emergency removals and the triggers for emergency removals, ICWA requires that an emergency proceeding terminate immediately when the removal or placement is no longer necessary to prevent imminent physical damage or harm to the child.

"States must comply with ICWA's limitations on such removals and placements. Upon removing an Indian child, the State must either determine that there is a risk of 'imminent physical damage or harm' to the child and follow the requirements for an emergency proceeding, or it must immediately terminate the emergency proceeding and initiate a child-custody proceeding and, if appropriate, return the child to her parent(s) or Tribe." (Interior Dept. Rules, 81 Fed. Reg. at 38817.)

26

state procedures the BIA focused on in 2016 (before pre-petition removals by warrant were authorized in California), as removal by warrant is nowhere mentioned in the ICWA regulations or BIA guidance. (See Interior Dept. Rules, 81 Fed. Reg. at 38794 [citing § 305, a warrantless removal provision, in fashioning the federal regulations].) For an emergency proceeding removing an Indian child, a court needs to make several findings, including the "imminent physical damage or harm" finding and others (25 C.F.R. § 23.113 (2023)), with different findings required if it were a child-custody proceeding (25 C.F.R. §§ 23.110, 23.120 (2023)). Warrant or not, a court must make these findings. ICWA does not authorize circumvention of its "imminent physical damage or harm" requirement simply by a court order applying some looser state standard to the removal of an Indian child. Under federal law, the imminent physical damage or harm requirement applies to all pre-petition removals of Indian children.

In sum, the *Adrian L.* concurrence misinterprets the BIA Guidelines to suggest a distinction between removals by warrant and removals without a warrant. Federally, inquiring of extended family is a *recommended* practice for *identifying* Indian children in "emergency situations," appearing only in a BIA Guideline interpreting the regulation about emergency proceedings, 25 C.F.R. § 23.113. (BIA Guideline C.7, pp. 28-29.) Any pre-petition removal of an Indian child is subject to the ICWA emergency proceeding standard, requiring imminent physical damage or harm—no matter that California law would allow removal of *non*-Indian children using a lesser standard, if a warrant is

27

obtained—and thus any pre-petition removal of an Indian child is an "emergency situation" as that phrase was used in the BIA Guidelines.[12]

Finally, it may be that the source of our Legislature's decision to impose an "extended family" inquiry in section 224.2, subdivision (b), was not the bare reference in BIA Guideline C.7 at all. A 2017 report of an ICWA task force appointed by the State Attorney General concluded that "initial inquiry should not be made only to the parents." (California ICWA Compliance Task Force, Report to the California Attorney General's Bureau of Children's Justice, p. 28 <https://caltribalfamilies.org/wp-content/uploads/2020/12/ICWAComplianceTaskForceFinalReport2017.pdf> [as of Feb. 21, 2024].) Unlike Guideline C.7, the report explained why initial inquiry of only parents may be inadequate: "Parents may simply not have that information or may possess vague or ambiguous information. ¶ The parents . . . may be fearful to self-identify. . . . Parents may even wish to avoid the tribe's participation or assumption of jurisdiction." (California ICWA Compliance Task Force, Report to the California Attorney General's Bureau of Children's Justice," p. 28.) The task force recommended

_____

[12] A more familiar analogy may help illustrate *Adrian L.*'s error. A car may be searched with or without a warrant, so long as an officer has probable cause to believe that it contains contraband. If the evidence at a suppression hearing demonstrates the probable cause standard was not met, the search would be invalid in either situation and the evidence may not be used at trial. But in either situation there still was a "search," whether the search met the probable cause standard or not.

Likewise, an Indian child may be removed from parents with or without a warrant, so long as the child faces "imminent physical damage or harm." If the evidence at a detention hearing demonstrates that standard was not met, the Indian child must be returned to the parents in either situation. But in each situation there still was an emergency removal in an emergency proceeding whether or not the standard was met.

28

amending the rules of court "to support more robust inquiry" and "[r]emove reliance on the parents to supply information." (*Id.* p. 29.)

A few months after the report, Assembly Bill 3176 was introduced in the Assembly Human Services Committee. (Hearing before Assem. Human Services Com. introducing Assem. Bill 3176 (2017-2018 Reg. Sess.) Apr. 18, 2018, 2:30:00-2:38:00 <https://www.assembly.ca.gov/media/assembly-human-services-committee-20180410> [as of Feb. 21, 2024]; see *In re S.S.* (2023) 90 Cal.App.5th 694, 699 (*S.S.*) ["The 2018 amendment originated in a 2017 report by the California ICWA Compliance Task Force."]). Delia Sharpe, executive director of the bill's sponsor, the California Tribal Families Coalition, sat with the author and testified that her organization was "a successor organization to the California ICWA Compliance Task Force." (Hearing before Assem. Human Services Com. introducing Assem. Bill 3176, *supra*, at 2:32:35; see <https://caltribalfamilies.org> [as of Feb. 21, 2024].) The coalition was "[f]ormed in 2017 to implement the comprehensive findings of the California ICWA Compliance Task Force." (*S.S.*, at p. 702.) Another witness, Maryann McGovran, identified herself as one of the task force principals and expressed her support for the bill. (Hearing before Assem. Human Services Com. introducing Assem. Bill 3176, *supra*, at 2:34:15.) The extended family inquiry was added to the bill after that initial hearing. Although the legislative history does not explain the addition, it states that while the bill "generally tracks" the federal ICWA guidance, it "deviates from the federal standard in provisions where California's standard is higher." (Assem. Bill 3176, Sen. Judiciary Com., June 18,

29

2018, at p. 6.)  The broad task force reasoning aligns with interpreting the statute to require inquiry of extended family in every case in which a child is removed from parents, rather than excluding cases where a warrant was used.

4. *The Department's Error Is Not Harmless*

We conclude that the department did not satisfy its duty of inquiry, and that the error was not harmless.

There is no question the department failed to ask certain readily available extended family members about the Samantha's potential Indian heritage.  Many of Samantha's paternal relatives were heavily involved in her dependency and thus well known to the department.  The paternal grandparents attended the detention hearing and Samantha was placed with them for a time.  Three paternal relatives—two aunts and an uncle—appeared for the jurisdiction and disposition hearing, and one of those aunts also appeared for the detention hearing.  Later, the department placed Samantha with a paternal aunt, who became her prospective adoptive parent.  Nevertheless, there is no evidence of the department asking these relatives whether Samantha may be an Indian child.  Nor did the department ask any maternal relatives other than mother herself.

Under these circumstances, the ICWA error was prejudicial.  When an appeal concerns "the agency's duty of initial inquiry, only state law is involved.  Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742, italics omitted.)  There is a split of authority among the Courts of Appeal regarding the standard for evaluating

30

whether an ICWA inquiry error was prejudicial. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 611-618 [summarizing the various approaches].) Our Supreme Court has granted review on the issue in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578.

Absent further guidance, we will apply the standard adopted in *Benjamin M.* Under *Benjamin M.*, we must remand "where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) In some cases, a thorough, but not perfect, inquiry can suffice for a reliable determination, despite some omissions. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 325 [discussing hypothetical where agency "interviews the maternal grandfather; several, but not all of his four siblings; and the maternal grandfather's surviving parent, none of whom indicates the family has any Indian ancestry," and concluding that the "failure to interview the grandfather's remaining siblings would certainly be harmless absent some additional unusual circumstance"].) Here, however, the department did not extend its ICWA inquiry to *any* relatives other than mother and father, even though various paternal relatives had attended hearings and acted as caregivers for Samantha during the 31 proceedings. Those family members were readily available and will have information about whether Samantha is an Indian child.

Accordingly, we must remand with instructions for the court and the department to complete the ICWA inquiry.

5. *The Dissent*

The dissent's view is that our Legislature intended different ICWA initial inquiry duties for children removed from their parents with a warrant and those removed without one. This means that if a child is removed without a warrant, the Department will, for the rest of the dependency, have an inquiry duty to ask extended family members whether the child is Indian. But if on the same day a different child is removed by warrant, the Department will have no such initial inquiry duty.

By contrast, our view is that the Legislature intended every child removed from their parents in a dependency to be subject to the *same* initial inquiry; whether the child is removed by warrant has no connection to the inquiry required. This is not "disparate treatment" of children. (Dis. & conc. opn. of Fields, J., *post*, at p. 7 (Dis).) Quite the opposite. Moreover, we believe our view aligns with federal ICWA's standards, as ICWA requirements for the removal of an Indian child are unaffected by whether a warrant is used. Our view also aligns with rule 5.481(a)(1), which requires the same initial inquiry for any child being removed. Indeed, the caselaw the dissent follows must "disapprove[]" that rule because it cannot be reconciled with those cases' conclusion that the Legislature *wanted* disparate treatment of children based on how they are removed. (*Andres R. supra*, 94 Cal.App.5th at p. 854.)

Subdivision (c) of section 340 requires children taken into custody by warrant to be delivered to a social worker, stating that the worker shall follow the same provision that applies to children removed without warrants and investigate and attempt to maintain the child with the family.  Other types of warrants, in contrast, might require the subject of the warrant delivered to court.  The dissent argues our view renders subdivision (c) of section 340 surplusage.  (Dis., *post*, at p. 3.)  It does not, as the legislative history shows.

Before legislation authorizing pre-petition warrants in section 340 was enacted in 2017, some courts, but not others, would issue pre-petition warrants under authority "inherent in their judicial powers."  (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1401, as introduced Feb. 17, 2017, at p. 3.)  The bill to authorize such warrants was in print without subdivision (c), because even without that subdivision, the Assembly author had assumed that existing procedures applicable "upon delivery to the social worker of a child who has been taken into temporary custody under this article" would apply.  (*Id*. at p. 5.)  But the author thought it was "arguably unclear" what was supposed to happen when a child was removed by warrant," and proposed subdivision (c) to "clarify" the procedural steps.  (*Ibid*.)  Thus, the section was added to remove any ambiguity as to whether a pre-petition warrant meant the social worker followed the existing procedures that apply "upon delivery to the social worker of a child who has been taken into temporary custody."  (*Ibid*.; see Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1401, Apr. 19, 2017, at p. 5 ["This bill would subject a child removed by a protective custody warrant when a petition has not been filed to these same provisions

33

and restrictions currently in place for a child in temporary custody."].)  With subdivision (c) in the statute, the Legislature enacting Senate Bill 1437 in 2018 would expect that those delivered after removal by warrant would be placed in the temporary custody of a social worker just as those delivered after warrantless removal.

The dissent disagrees with section II.B of this opinion, claiming it "fails to show . . . examples demonstrating that 'temporary custody' can sometimes refer to custody gained by virtue of a warrant."  (Dis., *post*, at p. 6.)  However, as that portion of the opinion explains, the Legislature used the term "temporary custody" to describe children taken into protective custody by warrant.  For instance, section 319, subdivision (b)(7), requires that at a detention hearing where there is reason to know a child is Indian, the social worker must report in detail on the circumstances that caused the child to be taken into "temporary custody."  That section applies to any case where there is reason to know a child is Indian.  So the Legislature there used the term "temporary custody" to refer to the child's pre-detention custody, whether or not the child was taken into custody with a warrant.  The term includes those who entered custody by warrant.

The dissent disagrees with the way we interpret "the conditional language of section 224.2(b)."  (Dis., *post*, at pp. 3-4.)  That section states that if a child is placed in a department's temporary custody by section 306, the department has a duty to inquire of extended family.  As stated in section II above, our view is that under sections 306 and 340 this "conditional" language applies to all removed children awaiting their detention

hearings in the department's custody, as they all are in temporary custody under 306 for the brief pre-hearing period.  Among children awaiting detention hearings in social worker custody, it would be curious to classify some as in temporary custody (if removed without a warrant) and some—handled by the department in the same way—as not in temporary custody, only protective custody (if removed by warrant).

The dissent posits that "longstanding principles of law" mean the conditional language "if A, then B" must be interpreted to mean "if and only if A, then B."  That is, the dissent takes the position that conditional statements like the one found in section 224.2, subdivision (b), always mean "the required act comes into play *only if* the condition is met." (Dis., *post*, at pp. 3-4, italics added.)  The dissent thus argues that under our view we cannot require the heightened inquiry where there is no temporary custody, such as the occasional circumstance where a child is detained for the first time at the detention hearing.

But this is reading into the statute a logical operator that does not appear there. "If-then" statements are not equivalent to "if and only if-then" statements.  Consider a supermarket chain's rule that "if a customer purchases liquor at the checkout counter, the clerk has a duty to inquire as to his or her age."  Consider further that at a particular market clerks sometimes bring internet orders to customers in the parking lot.  Does the conditional language *preclude* the market from interpreting the supermarket chain's rule to mean that the clerk *also* has a duty to check the age of liquor purchasers receiving their groceries in the parking lot?  Of course not, as the context makes clear.  The obvious

concern of a supermarket is the age of the liquor purchaser, not whether that purchase happens to be at the checkout counter. Interpreting the rule as authorizing age-checks "only if" a purchase is at the checkout counter would undermine the purpose of the rule—to make sure underage people cannot buy liquor.

In the same way, ICWA and its federal and state laws and regulations are concerned with what happens when Indian children are removed from their parents, not whether the removal happens to be performed by warrant. Our Legislature imposed a general "affirmative and continuing" duty of inquiry into a child's Indian heritage on departments from the outset of any dependency case. (§ 224.2, subd. (a)). The statute then expressly imposes the heightened duty to inquire of extended family when a child enters the department's temporary custody before a detention hearing. (§ 224.2, subd. (b).) That covers the bulk of cases where children are removed from their parents. Consistent with this, rule 5.481(a)(1) imposes the heightened duty in all cases when a child is removed from parents. That rule is consistent with the statute because what matters under it is whether an Indian child is being removed, not the method of removal. There is "one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Delila D*., *supra*, 93 Cal.App.5th at p. 962.)

36

*D. Section 388 Petition*

    1. *Additional Background*

Before the jurisdiction/disposition hearing, father told the department he had a long history of methamphetamine abuse and had started using again in 2019. He at first hid the use from mother, but the two of them eventually used together until mother became pregnant with Samantha. Father said he briefly stopped using after Samantha was born, but that he and mother started using together again, up through one week before the children were detained.

In December 2021, both parents took a hair follicle drug test and tested positive for methamphetamine. Father also tested positive for amphetamine. Later that month, father tested positive for only marijuana.

In the months following the jurisdiction/disposition hearing father reported he was homeless. During that time, mother was living with maternal grandmother. As of May 31, 2022, father had only attended four of 16 domestic violence classes and his enrollment was terminated for excessive absences. Father had not enrolled in individual counseling and stopped attending his substance abuse program. His substance abuse program enrollment was terminated, though the counselor reported father was testing clean and participated when there. The department could not confirm whether father was enrolled in parenting classes. Father was, however, mostly consistent in his visitation, both in person and remotely.

Before the six-month review hearing, the department recommended terminating father's reunification services. The court continued the hearing to allow father to contest that recommendation.

In September 2022, the court held the continued six-month status review hearing, where it terminated reunification services as to Samantha for both parents. The court ordered the department to refer father for a hair follicle drug test "forthwith."

On January 10, 2023, father requested the department financially help him obtain more services. The same day, he filed a section 388 petition requesting more reunification services because circumstances had changed. The petition alleged father completed a 60-day inpatient substance abuse program, completed parenting classes through the same program, and attended Narcotics Anonymous/Alcoholics Anonymous meetings at least twice weekly since leaving inpatient recovery. Father attached a certificate of completion for his inpatient recovery and parenting classes to the petition. Father requested the court again order a hair follicle test referral, that it reinstitute reunification services, and that it increase visitation.

Judge Susanne Cho continued the section 366.26 hearing to give the department time to conduct a preliminary adoption assessment. Judge Cho also set an evidentiary hearing for the section 388 petition for the same day as the section 366.25 hearing: February 28, 2023.

Despite having been ordered to refer father for a hair follicle test "forthwith," the department did not attempt to contact father for over a month. A social worker tried

calling father on February 16 to learn information relating to the section 388 petition. The social worker called again five days later for the same reason. The social worker left a message requesting a return call but did not hear back.

On February 23, five days before the section 366.26 hearing, the department filed a report recommending the court deny father's section 388 petition and terminate his parental rights. The report alleged father "ha[d] not made himself available to [the department] to inquire what he learned in services or to assess for any behavioral changes," that he "ha[d] not made himself available to [the department] to refer him to drug testing," and that the department could not confirm whether father was drug free. The report also stated, "[i]t is unknown to [the department] if [father] was drug testing . . . in November and it would be duly noted that it has been almost three months since [father] has been in treatment."

Both the evidentiary hearing on the section 388 petition and the section 366.26 hearing were set for February 28, 2023. Judge Natalie M. Lough—a different judge than had originally set the hearing—presided over that hearing. Father told the court that he tried contacting the department multiple times but did not hear from them until the February calls, when he learned the social worker had been out for over a month. Father said he never received the hair follicle test referral and could not provide the information the department sought. On this basis, father orally requested a continuance to allow him to test and for the department to investigate the factual basis for his section 388 petition. The department confirmed the social worker had been out for some time, though counsel

39

for the department was unsure how long. Based on this, the department at first agreed to a continuance. Minor's counsel also agreed to a continuance but noted that they would likely continue to oppose the petition even if a hair follicle test came back clean and the department could confirm the facts underlying the petition.

After tentatively conveying willingness to grant the continuance, the court reversed course, citing *In re B.C.* (2011) 192 Cal.App.4th 129 for the proposition that she had discretion to deny any oral request for a continuance for lack of showing of good cause. It agreed with minor's counsel that it did not believe father could meet his burden under section 388 even with a clean drug test and confirmation of the alleged changed circumstances. On this basis, the court denied the request to continue as untimely and without good cause.

Father then requested to testify to the changed circumstances under oath. The court denied this request as well: "[t]he problem with that . . . is because your request for a continuance was not noticed to all parties, that the [d]epartment doesn't have the social worker or any of the records available to contest father's statement [or] adequately prepare for cross-examination." The court also noted that father could have obtained independent drug testing of his own to prove that he was clean and sober and did not, despite having the burden under section 388.

The court proceeded immediately to the section 366.26 hearing. Father requested a continuance due to the department filing a late report recommending termination of parental rights. Father also requested the time to complete a bonding study. The

40

department conceded it did not file the report timely, and had not recommended terminating parental rights, but argued "going back to September of last year, everybody is on notice that, basically, the Department is going to be asking to terminate the parental rights." Minor's counsel added that the section 366.26 hearing was already continued to allow for a preliminary adoption assessment, so father was on notice that the department intended to move forward with adoption. The court concluded that despite the untimeliness of the report, father had sufficient notice that termination of parental rights was on the table and adopted the department's recommendation to do so.

2. *Analysis*

Under section 388, "[a] juvenile court order may be changed, modified or set aside . . . if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child." (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.) The parent bears the burden of proving both elements. (*Ibid.*) The petition must be "liberally construed in favor of its sufficiency." (Rule 5.570(a).) " 'If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . .' [Citation.] Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912 (*Lesly G.*).)

For example, in *Lesly G.* parents petitioned under section 388, and the court responded ambiguously by checking three contradictory boxes in ruling on the petition:

41

one which found the petition stated a prima facie case, one which ordered a hearing on the petition, and one which said the court would not hold a hearing. (*Lesly G.*, *supra*, 162 Cal.App.4th at p. 909.) The court then notified parents that it would hold the hearing, and subsequently continued a section 366.26 hearing so both hearings would occur on the same day. (*Lesly G.*, at pp. 909-910.) At the hearing, the court simply stated that the section 388 petition had been denied before moving straight to the section 366.26 hearing. (*Lesly G.*, at pp. 910-911.)

In that case the reviewing court interpreted the trial court's ambiguous ruling as a finding that the petition satisfied the parents' burden of making a prima facie showing, so the parents were entitled to an evidentiary hearing. (*Lesly G.*, *supra*, 162 Cal.App.4th at p. 913.) Further, the reviewing court held the juvenile court had erred by failing to hold an evidentiary hearing, even though one had been calendared. It noted that the juvenile court "neither took testimony nor received documentary evidence, and it denied the petition without affording counsel an opportunity to argue the merits of the petition," before concluding that "[i]n short, it provided no hearing whatsoever." (*Id.* at p. 915.) Thus, the juvenile court's procedures did not "comport[] with due process or with the statutory mandate of section 388," reversed, and remanded to allow for an evidentiary hearing. (*Id.* at pp. 915, 917.)

This case is similar to *Lesly G.* If anything, the case for reversal and remand is stronger here than in *Lesly G.* First, the court's initial order on the section 388 petition unambiguously ruled father was entitled to an evidentiary hearing. Indeed, the

department concedes that the first judge "initially ruled that Father's petition met the prima facie showing for an evidentiary hearing." Second, the department failed to abide by court orders before the hearing—specifically, the order that father be provided drug testing "forthwith," prejudicing father's ability to establish his sobriety. Finally, as in *Lesly G.*, the court here did not offer any party the opportunity to present evidence or argue the merits of the petition. Therefore, under *Lesly G.*, father was entitled to an evidentiary hearing, and he did not receive one.

In any event, the department argues, the second judge did not have to hold an evidentiary hearing because she summarily denied the petition herself, overriding the previous judge's ruling. This argument is unavailing. Though courts usually have the power to correct their own prejudgment errors or reconsider interim rulings, "if the reconsideration is accomplished by a different judge . . . the general rule is just the opposite: the power of one judge to vacate an order made by another judge is limited." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427 (*Alberto*).) " 'This is because the state Constitution, article VI, section 4 vests jurisdiction in the court, ". . . and not in any particular judge or department . . . ; and . . . whether sitting separately or together, the judges hold but one and the same court." ' " (*Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 741.) In short, a superior court "though comprised of a number of judges, is a single court and one member of that court cannot sit in review on the actions of another member of that same court." (*People v. Woodard* (1982) 131 Cal.App.3d 107, 111.) "If the rule were otherwise, it would be only a matter of days until we would have

a rule of man rather than a rule of law." (*People v. Scofield* (1967) 249 Cal.App.2d 727, 734.) This rule applies in both civil and criminal contexts, and even applies when the second judge is seeking to correct a perceived or actual error in the first order. (*Alberto*, at p. 427 ["For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court."].) Accordingly, once the first judge found father stated a prima facie case and ordered an evidentiary hearing, the second judge did not have the power to contradict that order and summarily deny the petition herself.

We therefore conclude the second judge's decision to summarily deny father's petition, or otherwise fail to hold an evidentiary hearing, did not comport with due process. "[B]ecause we reverse the order denying appellant's petition for failure to comport with due process, we must also reverse the order under section 366.26 terminating parental rights and selecting adoption as the permanent plan." (*Lesly G.*, *supra*, 162 Cal.App.4th at p. 916.) We do so " 'with reluctance . . . for each delay in reaching a permanent plan "can be a lifetime to a young child." ' [Citation.] Nevertheless, where the petitioner presented a prima facie case of changed circumstances sufficient to trigger [their] entitlement to a section 388 hearing, we cannot presume that a hearing would have been fruitless." (*Ibid.*) We take no position on how the court should rule on father's petition. We hold only that he is entitled to a full and fair hearing before the court makes that determination.

## III. DISPOSITION

We reverse the order terminating father's parental rights and vacate the court's finding that ICWA does not apply. We remand the matter to the juvenile court with directions to afford father an evidentiary hearing on his section 388 petition before proceeding to the section 366.26 hearing.

We also direct the court and the department to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3—and, if applicable, the notice provisions as well—consistent with this opinion.

CERTIFIED FOR PARTIAL PUBLICATION

RAPHAEL_____
                                                                                                          J.

I concur:


McKINSTER_____
            Acting P. J.

45

[*In re Samantha F.*, E080888]

FIELDS J., Concurring and Dissenting.

I fully concur in the majority's decision in this case except its determination adopting the reasoning and holding of this court's decision in *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted September 27, 2023, S281447 (*Delila D.*), regarding the scope of the ICWA inquiry required in this case. I continue to agree with and follow this court's decisions on the ICWA inquiry question in *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*), *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 (*Ja.O.*), and *In re Andres R.* (2023) 94 Cal.App.5th 828, review granted November 15, 2023, S282054 (*Andres. R.*).

Thus, while I concur with that portion of the majority opinion holding that "the juvenile court erred by refusing to allow father to testify or present evidence in support of his petition for reinstatement of reunification services" and remanding "for an evidentiary hearing on father's petition" (Maj. Opn., p. 2, fn. 2), I respectfully dissent to that portion of the majority opinion reversing the juvenile court's determination that adequate ICWA inquiry occurred in this case. I also briefly address the majority opinion's explanation of the scope of the terms "protective custody" and "temporary custody" and its view of the "application of federal law to the ICWA inquiry." (Maj. Opn., p.2.)

The ongoing dispute regarding the appropriate scope of initial inquiry under ICWA arises from the different interpretations by various courts of Welfare and

1

Institutions Code section 224.2, subdivision (b) (§ 224.2(b)).[1]  That statute provides that

"[i]f a child is placed into the temporary custody of a county welfare department pursuant

to Section 306 or county probation department pursuant to Section 307, the county

welfare department or county probation department has a duty to inquire whether that

child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents

. . . [and] extended family members . . . whether the child is, or may be, an Indian child

. . . ."  (§ 224.2(b).)

      This court's decision in *Robert F*. held that this expanded duty of inquiry applies

"only when a child is placed in temporary custody under section 306, it does not apply

when a county welfare department takes a child into protective custody pursuant to a

warrant."  (*In re Robert F*., *supra*, 90 Cal.App.5th at p. 497.)  The majority opinion

adopts and follows the reasoning and conclusions of *Delila D.*, from a different panel of

this court, which held that the duty of expanded inquiry under section 224.2(b), including

extended family members, applies in every dependency proceeding.  (Maj. Opn., p.2;

*Delila D.*, *supra*, 93 Cal.App.5th at. p. 962.)

      *Delila D*. came to that decision, in part, by concluding that "section 224.2(b)'s

reference to temporary custody 'pursuant to Section 306' is better read as including

children who, though initially removed by protective custody warrant, are then delivered

or placed into the department's custody pending a detention hearing."  (*Delila D.*, *supra*,

93 Cal.App.5th at. p. 973).  In *Ja.O.,* another panel of this court thoroughly considered

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

that claim and rejected it, noting that, if that interpretation "were correct, then most of subdivision (c) of section 340 would be surplusage." (*Ja.O.*, *supra*, 91 Cal.App.5th at p. 680.) We went on to affirm that oft-stated maxim that statutory interpretations which render all of a portion of a statute surplusage should be avoided. (*Ibid.*) I need not repeat that discussion here.

*Delila D*. also emphasized that "section 224.2(b) does not state that the inquiry it describes applies 'only if' a child is taken into temporary custody under section 306," and that section 224.2(b) "does not contain the word only or any other language suggesting an intent to limit the inquiry it describes" (*Delila D.*, 93 Cal.App.5th at p. 974). The absence of the language "only if" was a significant factor in *Delila D.'s* conclusion that "[e]ven if [*Robert F.'s*] conclusion that section 306 excludes removals by protective custody warrant were correct, we would still disagree with its conclusion that the duty described in section 224.2(b) does not apply once a child initially removed by warrant is removed from parental custody at the disposition hearing." (*Delila D.*, at p. 974.)

I am particularly persuaded by *Andres R.'s* examination of *Delila D.'s* view on the conditional language of section 224.2(b)). *Andres R.* concluded that "according to *Delila D.*, when the Legislature said, 'If the following condition is met, the social worker has a duty of inquiry,' what the Legislature meant was 'If the following condition is met, the social worker has a duty of inquiry, but if the condition is not met, the social worker still has the same duty of inquiry anyway.' " (*Andres R.*, *supra*, 94 Cal.App.5th at p. 846*.*)

I respectfully believe that this view, espoused by *Delila D.*, is inconsistent with longstanding principles of law. When a law requiring that something be done is

conditional upon some other act or determination occurring first, the required act comes into play only if the condition is met. (See *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806-807) ["The conditional language of section 388 makes clear that the hearing is *only* to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition."]

Similarly, here, the conditional language of section 224.2 (b) makes clear that if the condition is not met, that is, the removal is with a warrant,[2] the requirement of the expanded duty of inquiry under section 224.2(b), to inquire of the child's extended family members, does not apply. Moreover, if the Legislature wanted the extended duty of inquiry to apply in every case, it could have easily said so, rather than using the conditional language it chose in section 224.2(b), which limits the statute's application to sections 306 and 307 (dealing with warrantless removals) and making no reference to section 340 (dealing with removals utilizing protective custody warrants).

---

[2] The condition stated in section 224.2(b) refers to children removed pursuant to sections 306 and 307 (without protective custody warrants). Section 224.2(b) references only sections 306 and 307, which pertain to warrantless removals of children. Section 306, subdivision (a)(1), gives social workers the right to "[r]eceive and maintain . . . *temporary custody* of a child . . . who has been delivered by a peace officer." (Italics added.) Police officers are only authorized to take children into *temporary custody* without a warrant. (See §§ 305, 305.6, 625). Section 306, subdivision (a)(2), authorizes a social worker to take and maintain a child in "*temporary custody. . . without a warrant*" when "the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (*Ibid*.) A county probation department may only take a child into *temporary custody*, under the dependency statutes, without a warrant. (See §§ 305, 307.)

4

According to the majority opinion, "there are at least two other reasons for rejecting *Robert F*. beyond those discussed in *Delila D*." (Maj. Opn., p. 8.) First, the majority opinion concludes that "*Robert F*. construes the terms 'temporary custody' and 'protective custody' in a manner inconsistent with their uses in the dependency statutes." (Maj. Opn., p.8.) Second, the majority opinion concludes that *Robert F.'s* view that federal ICWA law supports its determination regarding the scope of inquiry under section 224.2(b) is based upon its misconstruction of federal ICWA law. I address these points in turn.

*Temporary Custody and Protective Custody Distinctions.* The majority opinion finds "unconvincing" the distinction between "temporary custody" and "protective custody" made by *Robert F*. and its progeny, which conclude that "[s]ection 306(a)(1) applies and has always applied only to the 'temporary custody' of a warrantless predetention removal, not to the 'protective custody' or removal pursuant to a protective custody warrant." (*Andres R*, *supra*, 94 Cal. App. 5th at p. 845.) (Maj. Opn., p. 10.) The majority posits that "[t]he terms 'protective custody' and 'temporary custody' are not exclusive of each other." (Maj. Opn., p. 10.) In part, I agree with this conclusion.

The majority points out, for example, that "when an authority 'takes into *temporary* custody' a minor under the sections (305 through 307) that authorize removals without warrants, the authority must inform the parents that the child 'has been taken into *protective* custody.' (§ 307.4, subd. (a), italics added.)" (Maj. Opn., pp. 10-11.) Thus, both terms are used for the same child. This example, and others used by the majority,

5

demonstrate that the term "protective custody" has been used to include children removed from home pursuant to a warrant or without a warrant.

The terms temporary custody and protective custody are not and need not be mutually exclusive. As explained in *Robert F*. and its progeny, "temporary custody" refers to situations where children are taken into custody without a warrant. (*Robert F*., *supra*, 90 Cal.App.5th at pp. 500-501; *Ja.O.*, *supra*, 91 Cal.App.5th at p. 678-679; *Andres R.*, *supra*, 94 Cal.App.5th at p. 841-842.) The fact that "protective custody" is sometimes used to refer to situations where a child is removed with or without a warrant does not undermine *Robert F.'s* conclusions. What the majority opinions fails to show is examples demonstrating that "temporary custody" can sometimes refer to custody gained by virtue of a warrant. As noted *in Andres R.*, "[t]he only statutes that authorize peace officers to take children into 'temporary custody' are sections 305, 305.6, and 625, all of which concern taking children into 'temporary custody' without a warrant." (*Andres R.*, at p. 843.)[3]

Finally, I respectfully disagree with the majority's view, consistent with *Delila D.*, that children taken into protective custody pursuant to a warrant and later transferred to a social worker are placed in temporary custody under section 306. (*Delila D.*, *supra*,

---

[3] The majority opinion suggests that the term "temporary custody" in section 319, subdivision (b)(7), refers to removals with and without a warrant. In my view, it makes sense for section 319, subdivision (b)(7), to refer to warrantless removals. If an Indian child is detained without a warrant, then section 319, subdivision (b)(7), would require a detailed report on why the child was removed. If an Indian child is removed pursuant to a warrant, the requirement would not apply because the court issuing the warrant already has the facts leading to removal.

93 Cal.App.5th at p. 974.) (Maj. Opn., pp. 8-15.) *Andres R.* notes that such view results in disparate treatment between those taken into custody before the detention hearing and those who are first detained by the court. (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 845-846.) I agree with and continue to follow *Andres R's* response to that view which I set forth below.[4]

*Application of Federal ICWA law and Guidelines.* The majority opinion criticizes the view of federal law set in various decisions of this court and as set forth in the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*). (Maj. Opn., p. 24, fn.10.) I continue to agree with and follow this court's view on the application of federal law to the initial ICWA inquiry as set forth in *Robert F.*, *Ja.O.*, and *Andres R.*

According to the majority opinion, "[f]ederal guidance recommends that states inquire of extended family in emergency proceedings, consistent with our Legislature's decision." (Maj. Opn., p.15.) I agree. In my view, however, the views expressed in

---

[4] As noted in *Andres R.*, "If *Delila D.* were right that section 306(a)(1) applies to children taken into protective custody pursuant to protective custody warrants, then the expanded duty of initial inquiry under section 224.2(b) would apply to all children taken into custody (with or without warrants) before the detention hearing, but it would not apply to children who are first detained by the court at the detention hearing, never having been taken into custody previously. *Delila D.* obviates the need to explain that differential treatment by arguing that because section 224.2(b) does not contain the word 'only,' it applies to all children regardless of whether they were taken into temporary custody under section 306 or 307. (*Delila D.*, *supra*, 93 Cal.App.5th at p. 974.) But if *Delila D.'s* argument concerning the absence of the word 'only' fails, as we argue it does (*ante*, pp. 846–848), then *Delila D.'s* interpretation of section 306(a)(1) and section 224.2(b) leads to differential treatment that is at least as hard to explain as the differential treatment under *Robert F.* and *Ja.O.*" (*Andres R.*, *supra*, 94 Cal.App.5th at p. 857, fn. 9.)

*Robert F.*, *Ja.O.*, and *Andres R*. are consistent with the federal guidelines when the removals are without a warrant.

In discussing the federal law and guidelines on the subject, the majority opinion notes that, "[i]nitial inquiry of extended family is mentioned in federal law only in the BIA guidance on emergency proceedings and only once." (Maj Opn., p. 22.) The majority opinion refers to section C.7 of the BIA Guidelines, which recommend "that the State agency ask the family and extended family whether the child" is or may be an Indian child "as part of the emergency removal and placement process. (BIA Guidelines C.7, p. 28, italics added.)" (Maj. Opn., p. 22.) The majority then says, "[t]he BIA's description of emergency removals as lacking court authorization [without a warrant] is no more than a reflection of the state procedures the BIA focused on in 2016 (before pre-petition removals by warrant were authorized in California), as removal by warrant is nowhere mentioned in the ICWA regulations or BIA guidance. (See Interior Dept. Rules, 81 Fed. Reg. at 38794 [citing § 305, a warrantless removal provision, in fashioning the federal regulations].)" (Maj. Opn., pp. 26-27.) I agree.

The BIA Guidelines—and section 224.2(b)—deal only with cases involving warrantless removals. (*Adrian L*, *supra*, 86 Cal.App.5th at pp. 362-363 (conc. opn. Kelley, J.).) Therefore, Guideline C.7's recommendation for extended family inquiry in cases involving warrantless removals throws light on how the California Legislature determined to make California law consistent with the federal guidelines by requiring extended family inquiry for warrantless removals. A reading of the Guidelines

8

demonstrates that *Adrian L's* and *Robert F.' s* conclusion that section 306 refers to warrantless removals is sound and consistent with federal guidelines.[5]

Thus, I am persuaded that *Robert F.* and its progeny are correct, and I continue to agree with and follow those opinions.

FIELDS          

J.

---

[5] See U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (December 2016) <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf> [as of Feb. 21, 2024], in particular, Guidelines C.7, p. 28 [ recommending extended family inquiry in cases of as part of the "emergency removal and placement process"] and Guidelines C.2, p. 23 [defining emergency removal as being "taken into custody by a State official without court authorization"].